FIRST NATIONAL LEASING CORPORATION, Respondent, v. CITY OF MADISON, Appellant.

*No. 75–753. Argued November 2, 1977.—*
*Decided December 13, 1977.*
(Also reported in 260 N.W.2d 251.)

206

For appellant there were briefs by *Henry A. Gempeler,* city attorney, and oral argument by *Robert E. Olsen,* assistant city attorney.

For respondent there was a brief by *H. Robert Kilkelly,* and *Lee, Johnson & Kilkelly, S. C.* of Madison and oral argument by *H. Robert Kilkelly.*

HEFFERNAN, J. The Methodist Hospital of Madison, Wisconsin, leases x-ray and hospital-type equipment from the First National Leasing Corporation. It is contended that such equipment is exempt from property taxation under the provisions of subsec. 70.11 (4m), Stats., which provides:

"(4m) Nonprofit Hospitals. Property which is *used exclusively* for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or deformed, which hospital is owned and operated by a corporation, voluntary association, foundation or trust, no part of the net earnings of which inures to the benefit of any shareholder, member, director or officer, and which hospital is not operated principally for the benefit of or principally as an adjunct of the private practice of a doctor or group of doctors. The exemption herein granted shall be effective and apply to assessments of property for taxation made, or permitted to be made pursuant to s. 70.44, in the year 1957 and subsequent years." (Emphasis supplied.)

The City of Madison's position is that the property is not exempt from taxation, because it is not "used exclusively" for the purposes of the hospital. It bases its contention on the stipulated facts that the leasing company does business for profit, takes depreciation on the leased property for income tax purposes, and has put the property up as collateral on a loan. Hence, although the city acknowledges the hospital use, it argues that there

are other uses made of the property by the lessor and, accordingly, the hospital's use is not exclusive.

The stipulated facts show that the plaintiff leased property to the Methodist Hospital pursuant to a lease dated January 19, 1968. During the tax years of 1972 and 1973, the periods in contention here, the property—principally x-ray equipment—was located in the Methodist Hospital, was in its exclusive possession, and was operated only by hospital personnel in the performance of their regular hospital duties. The lease provided that, in the event the property leased was found to be taxable, the Methodist Hospital would pay the taxes.

For the purposes of determining the exemption question, the leasing company paid the taxes for the years 1972 and 1973 and, after filing the appropriate claims with the city for a refund, commenced an action for the return of the taxes paid. The circuit court on December 23, 1975, entered a judgment determining that the property was exempt from taxation under subsec. 70.11 (4m), Stats. We affirm that judgment.

Because the facts are stipulated, the only questions presented to this court are matters of law, to which this court may address itself without the requirement of giving special deference to the determinations of the trial court. *National Amusement Co. v. Department of Revenue,* 41 Wis.2d 261, 266, 163 N.W.2d 625 (1969).

The burden of showing that property is exempt from taxation is on the person seeking the exemption, and the rule is that all doubts are to be resolved against the exemption and in favor of taxability. *Wisconsin Electric Power Co. v. Department of Revenue,* 59 Wis.2d 106, 111, 207 N.W.2d 841 (1973). We, nevertheless, said in *Columbia Hospital Assn. v. Milwaukee,* 35 Wis.2d 660, 668, 151 N.W.2d 750 (1967):

"However, a strict construction is nonetheless a construction, and an exemption statute need not be given an unreasonable construction or the narrowest possible construction. A 'strict but reasonable' construction seems to be the pithy and popular statement of the rule."

Moreover, in all problems of statutory construction, legislative intent is to be derived by giving the language its ordinary and accepted meaning. *Transamerica Financial Corp. v. Department of Revenue,* 56 Wis.2d 57, 64, 201 N.W.2d 552 (1972).

The leasing company's argument is that the statute, in referring to property "used exclusively" for hospital purposes, is satisfied when the property is physically used exclusively for hospital purposes. It contends that it is, therefore, immaterial that the property is owned by another, leased to the hospital for profit, or used by the lessor as a loan collateral.

The City of Madison's argument is basically that utilized by Justice Traynor in his dissent in *Ross v. City of Long Beach,* 24 Cal.2d 258, 266, 148 P.2d 649 (1944). Therein, Justice Traynor said:

"The word 'property' includes all of the interests and estates therein. Therein is a recognized distinction in the several interests that may exist in property, and this court has sanctioned their separate consideration for purposes of taxation. . . . It follows that the property is not tax exempt unless all interests in the property, including the lessor's interest, are used exclusively for public schools."

While there is much to be said for this legalistic analysis which conceives of "property" as a bundle of rights and interests, some of which may be held by different persons for different purposes, we are satisfied that the term was not so employed in Wisconsin's legislative language. It is a strained and unreasonable con-

struction of the word, rather than a natural and ordinary one.

The City of Madison does not contend that the mere ownership of the property by other than a hospital qualifying under subsec. 70.11 (4m), Stats., would make the property taxable if the use by the hospital were gratuitous or if the property were leased to the hospital by a nonprofit corporation. Nevertheless, the city apparently contends that, despite the conceded exclusive physical use by the hospital, the property is taxable if any of the intangible incidents of ownership, such as mortgageability or depreciability, inure to the benefit of the lessor.

It is apparent, however, from the face of subsec. 70.11 (4m), Stats., and the context in which it appears, that the legislature made no attempt to predicate taxability on whether an owner derived a profit or other benefit from property which was used exclusively for hospital purposes. Not all of the exemptions set forth in sec. 70.11 are phrased solely in terms of "used exclusively." For example, under subsecs. 70.11 (4), (7), (13), (16), and (17), the property is exempt only if *owned* and used exclusively by the particularly favored institution. But in respect to nonprofit hospitals under subsec. 70.11 (4m), the only criterion is that the property be "used exclusively." Ownership is not mentioned.

It would thus appear that the legislature, in granting this exemption to the hospital, intentionally chose not to give any weight to ownership or incidents of ownership, such as the right to take depreciation or to use the property as loan collateral. The focus of the legislature was upon the utilization or employment of the property by the hospital, the institution which it sought to treat favorably by affording a tax exemption.

Had it sought to make the exemption dependent on ownership by the favored institution or to exclude exemption if the beneficial or profitable incidents of ownership inured to an owner not the hospital, it could have

said so in (4m), as it did in other subsections of sec. 70.11, Stats.

It should be noted, moreover, that the original drafts of subsec. 70.11(4m), Stats., required not only that the property be used exclusively, but that the property be owned by a nonprofit hospital. Because the ownership requirement was stricken from the draft bill, it is apparent that the legislature was not concerned about those attributes of property that inure to the title holder but have nothing to do with the physical use of the property.

Nevertheless, property has multiple "uses." In the instant case, the sophisticated x-ray equipment, which is the principal subject of the controversy, had diagnostic and therapeutic uses for the hospital. In addition, it had a use to its owner, the leasing corporation, as personal property which could be rented at a profit or which could be mortgaged or assigned. We conclude, however, that it was not these latter intangible uses of the property to which the legislature referred when it enacted the phrase, "used exclusively" for hospital purposes.[1] As stated above, words in a statute should be given their ordinary meaning. The verb, "to use," was explained in *Bowles v. Madl* (Kans. 1945), 60 F. Supp. 152, 153:

"In ordinary parlance to use an article is to utilize or employ it for the purposes for which it was intended. For instance, to use a plow is to cultivate the ground with the plow. To use a wagon is to haul with the wagon or drive it for the purposes for which a wagon is ordinarily used. To use a refrigerator is to place it in one's home to preserve food and kindred articles."

While the authorities show a multiplicity of meanings that may be ascribed to the word, "use," the great majority of cases consider the word, when a verb, as in subsec. 70.11(4m), Stats., to mean to physically employ the tangible characteristics of the property.

---

[1] In subsec. 70.11(4m), Stats., the legislature employed not the noun, "use," but the verb.

An extensive discussion of the various meanings that may be given to the words, "use" or "used," is to be found in *Estate of Holmes,* 233 Wis. 274, 280, 289 N.W. 638 (1940), and in *Estate of Cobeen,* 270 Wis. 545, 72 N.W. 2d 324 (1955). However, in the context of the Wisconsin tax statutes, we consider the rationale in *Gymnastic Association of the South Side of Milwaukee v. City of Milwaukee,* 129 Wis. 429, 109 N.W. 109 (1906), to be controlling.

That case involved a claim for taxes by the City of Milwaukee against the Turner Society. Under the then existing statutes, the Turner Society was to be exempt from taxation for property which is "used exclusively for educational purposes" (at 432). The particular Turner Society leased a portion of its premises for a noneducational purpose—the operation of a saloon—but the income therefrom was disbursed for the general educational purposes of the Turner Society. This court found that the property was not exempt, because the statute, in referring to property "used exclusively for educational purposes" was concerned not with the income from the property, but with its physical use. Because in *Gymnastics Association* the court found the physical use to be for noneducational purposes, it was irrelevant what use was made of the income. The court emphasized that "used exclusively for educational purposes" only could have the natural meaning of referring to the physical use of the property. The same rationale is appropriate here.

A similar rationale—that it is the physical use of the property and not the intangible benefits derived from property with which the legislature is concerned in tax exemption statutes—was also employed in *Men's Halls Stores, Inc. v. Dane County,* 269 Wis. 84, 89, 69 N.W.2d 213 (1955).

It is irrelevant that an owner derives a profit or secures a benefit from the ownership. What is relevant

is the fact that the property physically is used exclusively by a hospital which admittedly qualifies as a nonprofit hospital as defined by subsec. 70.11(4m), Stats.

We accordingly conclude that, in the context of subsec. 70.11(4m), Stats., personal property is "used exclusively" for hospital purposes if, as in the instant case, it is in possession of the hospital and it is operated only by authorized hospital personnel and only in connection with the regular activities of a hospital.

To concede, as does the City of Madison, that exclusive ownership by the nonprofit institution is not required, but to contend that leased property is exempt only if the lease is not for profit, is to assert a requirement that does not appear in the statute.

Under the construction of the statute we adopt here, the clear legislative purpose to benefit a nonprofit hospital is advanced. By holding that leased property (whether for profit or not) used exclusively by a hospital is not taxable, the possibility of having the tax passed on to the hospital, and ultimately to the consumers of the health services, is avoided. As so viewed, the tax exemption is based on a reasonable legislative classification and, accordingly, it is not unconstitutional.

The purpose of this tax exemption is to provide a benefit to nonprofit hospitals engaged in the care of the sick. By lowering the operating costs of the hospitals involved, presumably the cost to patients will be lowered. The entire thrust of the city's argument on this point is directed at showing that there is no public purpose in "rewarding" the lessor of hospital equipment by granting an exemption, while lessors of other types of equipment must pay the tax. It is the hospital, and not the lessor, which is benefited or burdened by the taxation or exemption at issue here. Providing this benefit to hospitals is a legitimate exercise of the public taxing power, and the means adopted by granting an exemption under

subsec. 70.11 (4m), Stats., bears a reasonable relationship to that governmental end.

The trial judge, relying on the principles recently restated in *Wiener v. J. C. Penney Co.*, 65 Wis.2d 139, 222 N.W.2d 149 (1974), correctly determined that the classification made by the legislature was appropriate in light of the purpose to be served by the statute and, hence, was constitutional in respect to property leased to nonprofit hospitals, although the lessor operated a business for profit. The trial judge stated:

"The special class of medical equipment here at issue is used only by qualifying non-profit hospitals. Second, the classification is germane to the purpose of the law, which, as indicated, is to reduce the high escalating costs of medical care. Third, the classification is not set up so as to exclude the addition of other members, to-wit, additional non-profit hospitals who similarly qualify. Fourth, subsection (4m) clearly applies equally to all non-profit hospitals that make up the class; and lastly, the characteristics of the class in question is manifestly different from those of other classes of property and property users so as to reasonably suggest propriety having regard for the principle of giving some cost relief to those suffering from serious illness."

The property leased to the Methodist Hospital and used exclusively by it is exempt from taxation in accordance with the provisions of subsec. 70.11 (4m), Stats. That statute, as so interpreted, is not unconstitutional.

*By the Court.*—Judgment affirmed.

ABRAHAMSON, J., took no part.