The DOMINICAN NUNS, a Wisconsin non-profit corporation, Plaintiff-Respondent,†

v.

CITY OF LA CROSSE, a Wisconsin municipal corporation, Defendant-Appellant.

Court of Appeals

*No. 87–1119. Submitted on briefs October 30, 1987.—Decided December 10, 1987.*

(Also reported in 419 N.W.2d 270.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Patrick J. Houlihan,* city attorney.

For the plaintiff-respondent the cause was submitted on the brief of *L. E. Sheehan* and *Moen, Sheehan, Meyer & Henke, Ltd.,* of La Crosse.

Before Dykman, Eich and Sundby, JJ.

EICH, J.   The City of La Crosse appeals from a summary judgment requiring it to refund 1984 and 1985 real estate taxes paid by a religious order, The Dominican Nuns, on certain property located in the city. The dispositive issue is whether the property, although vacated by the order, remained "[p]roperty owned and used exclusively by ... [a] religious ... association[]" and was thus exempt from property taxation under sec. 70.11(4), Stats.

The case was decided by the trial court on an agreed statement of facts, and because the issue is solely one of law, we owe no deference to the court's decision. *Evangelical Lutheran Synod v. Prairie du Chien,* 125 Wis. 2d 541, 549, 373 N.W.2d 78, 82 (Ct. App. 1985). We conclude that the property was not exempt during the years in question, and we therefore reverse.

The order maintained a convent on the property from 1953 until December, 1983, when it moved its headquarters and all its members to new facilities in another part of the country. The La Crosse property, which consisted of a chapel/residence hall, a second residence unit, and a garage, was first listed for sale in mid-1983, and the order moved out sometime thereaf-

ter. The order continued to maintain heat and electric service at the property and arranged for its continued maintenance until it was sold on December 31, 1985.

After the order departed, the city inspected the property and, finding it vacant and listed for sale, determined that it was nonexempt as of January 1, 1984, and proceeded to assess taxes for the years 1984 and 1985. The order filed appropriate objections and paid the taxes under protest. It then commenced legal action to recover the amount paid, and the trial court ordered the refund.

As indicated, sec. 70.11(4), Stats., provides a tax exemption for property owned and used exclusively by religious associations. The order qualifies as such an association, and it was the record owner of the property in 1984 and 1985. The question is whether the order may be said to have "exclusively used" the property during those years within the meaning of the statute.

Tax exemptions are matters of legislative grace and there must be clear evidence that such grace was intended before we will so find in a given case. *Wisconsin Electric P. Co. v. Dept. of Revenue,* 59 Wis. 2d 106, 110, 207 N.W.2d 841, 843 (1973). Taxation is the rule, and exemption the exception. As a result, "[s]tatutes exempting property from taxation are to be strictly construed and all doubts are resolved in favor of its taxability." *Id.* at 111, 207 N.W.2d at 843–44, quoting *Madison Aerie No. 623 F.O.E. v. Madison,* 275 Wis. 472, 476, 82 N.W.2d 207, 210 (1957).

The order argues that the property must be considered as remaining in its "exclusive use" in 1984 and 1985 because: (1) it stored some maintenance tools and lawn implements there; (2) it retained a grounds-

keeper to maintain the property; (3) it had the property listed for sale; and (4) it maintained a mortgage on the property and used some of the proceeds to acquire its new quarters on the east coast. In support of its argument, the order cites *Family Hospital Nursing Home, Inc. v. Milwaukee,* 78 Wis. 2d 312, 323, 254 N.W.2d 268, 275 (1977), in which the court held that a newly-constructed nursing home qualified for exemption under sec. 70.11(4), Stats., while it was "readying itself for its benevolent purpose," even though the facility was not yet physically occupied. There, however, the home had been built and fully equipped and was in the final process of preparing for the arrival of its first patients. In this case, the order had effectively abandoned the La Crosse property and had moved to its new headquarters during the period in question. A fully constructed and equipped nursing home awaiting its patients is a far different thing from vacant land and buildings in the process of disposal by an entity already occupying new premises elsewhere.

In *First Nat. Leasing Corp. v. Madison,* 81 Wis. 2d 205, 211–12, 260 N.W.2d 251, 254–55 (1977), the supreme court defined "exclusive use" as that phrase appeared in sec. 70.11(4m), Stats., the hospital personal property tax-exemption statute, as "physically employ[ing] the tangible characteristics of the property"—the "physical use of the property." Applying that definition to x-ray and other equipment, the court held that such property would be "exclusively used" by the hospital if it was operated by hospital personnel and used "only in connection with the regular activities of a hospital." *Id.* at 213, 260 N.W.2d at 255.

We do not consider that the claimed "uses" of the order's La Crosse property—heating it, keeping it in repair, listing it for sale, and maintaining a mortgage—meet this definition. The property was not being "used" for any of the order's regular activities or benevolent purposes. Indeed, the order had no presence on the property other than through a locally-retained maintenance person. The former convent was vacant, and we have recognized that premises which are "wholly vacant and unoccupied" do not qualify for exemption under sec. 70.11(4), Stats. *Evangelical Lutheran Synod,* 125 Wis. 2d at 545 n.3, 373 N.W.2d at 80, citing *State ex rel. State Asso. of Y.M.C.A. v. Richardson,* 197 Wis. 390, 392, 222 N.W. 222, 223 (1928).

We hold, therefore, that where a religious society has vacated its convent and chapel, listing it for sale, and has permanently relocated elsewhere, the property is no longer "used exclusively" by the society within the meaning of sec. 70.11(4), Stats; and the fact that members of the society have mortgaged the property to assist in their relocation, and have made arrangements for its upkeep pending its sale, does not alter that conclusion. The order has not met its burden of establishing that it was entitled to the exemption after December 31, 1983, and the city properly assessed and taxed the property in 1984 and 1985.

*By the Court.*—Judgment reversed.