WISCONSIN DEPARTMENT OF REVENUE, Petitioner-Appellant,

v.

NORTHERN STATES POWER COMPANY, Respondent-Respondent.

Court of Appeals

*No. 96–3675. Submitted on briefs April 22, 1997.—Decided July 8, 1997.*

(Also reported in 571 N.W.2d 676.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Gerald S. Wilcox,* assistant attorney general, of Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Robert A. Schnur* of *Michael, Best & Friedrich* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   The Wisconsin Department of Revenue (department) appeals the court's order affirming a decision and order of the Wisconsin Tax Appeals Commission (commission), which reversed a franchise tax assessment made by the department against Northern States Power Company (Northern). On appeal, the department asserts that Northern's amortization deduction for its safe harbor lease expenditures is not an allowable deduction for purposes of the Wisconsin franchise tax. We disagree and affirm the order.

The facts were stipulated. Northern is a public utility incorporated in Wisconsin and engaged in the business of producing, distributing and selling electric power, and distributing natural gas in Wisconsin. In 1982, Northern, as buyer/lessor, purchased and leased property in the form of safe harbor leases under I.R.C. § 168(f)(8), in order to acquire from the seller/lessee the federal income tax benefits related to the property, as well as the Wisconsin franchise tax benefits at issue here and Minnesota tax benefits for its parent corporation.

Northern's safe harbor leases covered approximately $50 million worth of equipment. In connection with the safe harbor leases, Northern paid $13,782,811 in cash to a number of corporations, and $262,886 for transactional costs, for a total 1982 expenditure of $14,045,697. The transactions involved a total of thirteen safe harbor leases, with the majority being for a fifteen-year term.

In 1982, I.R.C. § 168(f)(8) permitted "safe harbor leases," which would not have otherwise qualified as leases for federal income tax purposes, to be treated as leases in order to permit a "seller/lessee" of property to transfer to a "buyer/lessor" the benefit of federal depreciation deductions and federal investment tax credits. However, in 1982, the Wisconsin franchise tax was not federalized and did not include the provisions of I.R.C. § 168(f)(8).[1]

For federal income tax purposes, safe harbor leases were treated as bona fide purchases of equipment by Northern from the sellers/lessees, followed by the lease of the equipment back to the seller/lessee. Under Wisconsin law, safe harbor leases were not considered actual sales and leasebacks, and each seller/lessee remained as the true owner of the equipment at all times. Accordingly, for Wisconsin tax purposes, Northern did not claim any tax benefits attributable to equipment ownership. However, Northern did claim a $212,762 deduction in 1982 for the amortization of its $14,045,697 investment in the safe harbor leases, including the payments to sellers/lessees and transaction costs. For each lease, Northern's costs were amortized over the term of the respective lease.

The department issued a notice of franchise tax assessment against Northern disallowing, among

---

[1] Section 71.04(15)(a), STATS., 1981–82, provided that "no loss or deduction shall be allowed to any corporation . . . with respect to depreciable property . . . unless the loss or deduction is allowed as a deduction under the internal revenue code for federal income tax purposes." Pursuant to § 71.04(15)(b), STATS., 1981–82, "[F]or taxable year 1981 and thereafter 'internal revenue code' does not include section 168(f)(8) of the code (relating to a special rule for leases)."

other things, $209,242 of the $212,762 claimed in its taxable year 1982 for the amortization of its investment in the safe harbor leases, but allowing the remaining $3,520 for the amortization of Northern's transactional fees, including legal fees, for the safe harbor leases. The department denied Northern's petition for redetermination of, among other things, its disallowance of Northern's amortization of payments to the sellers/lessees in the safe harbor leases.

The commission reversed the department's decision, concluding that Northern's purchase of these leases for its tax benefits were intangible assets under Treas. Reg. § 1.167(a)–3, and Northern was entitled to deduct the cash payments to each seller/lessee for the tax benefits, amortized over the term of each safe harbor lease, under I.R.C. § 167 as incorporated into Wisconsin's franchise tax. The trial court affirmed the commission. The department now appeals the order.

On an appeal from review of the Tax Appeals Commission's decision, we review the decision of the commission, not the trial court. *Larson v. LIRC,* 184 Wis. 2d 378, 386, 516 N.W.2d 456, 459 (Ct. App. 1994). When we review questions of law, as here, we are not bound by an administrative agency's conclusions. *Sauk County v. WERC,* 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991). Because the commission's statutory construction in this case is "very nearly" one of first impression, it has "great bearing on the determination as to what the appropriate construction should be." *City of Beloit v. WERC,* 73 Wis. 2d 43, 68, 242 N.W.2d 231, 243 (1976) (citation omitted). Therefore, the commission's decision is entitled to "due weight" or "great bearing." *William Wrigley, Jr., Co. v. DOR,* 176 Wis. 2d

795, 801, 500 N.W.2d 667, 670 (1993) (citation omitted).

The issue is whether Northern can, for Wisconsin franchise tax purposes, amortize and deduct the costs of its cash purchases of tax benefits in the form of safe harbor leases. Because tax deductions are matters of legislative grace, the taxpayer must establish that his or her claimed deduction is clearly granted by statute. *Comet Co. v. Department of Taxation*, 243 Wis. 117, 123, 9 N.W.2d 620, 623 (1943). Although an ambiguous statute will be strictly construed against granting a deduction, strict construction does not require the narrowest possible construction or an unreasonable construction. *Id.; Columbia Hosp. Ass'n v. Milwaukee*, 35 Wis. 2d 660, 668, 151 N.W.2d 750, 754 (1967). An unambiguous tax deduction statute is not subject to a narrow construction. *DOR v. Bailey-Bohrman Steel Corp.*, 93 Wis. 2d 602, 607, 287 N.W.2d 715, 717–18 (1980).

Safe harbor leases are not true leases under the franchise tax, but the transactions instead represent the purchase of tax benefits, *see United States Oil v. DOR*, Wis. Tax Rptr. ¶ 203–171 (CCH) (WTAC 1990), and exist solely for the purpose of transferring tax benefits. *See* William E. Auerbach, *Transfer of Tax Incentives and the Fiction of Safe Harbor Leasing*, 95 HARV. L. REV. 1752, 1763 (1982). Because of Wisconsin's non-recognition of I.R.C. § 168(f)(8), the department and Northern agree that many of the property rights conveyed by a safe harbor lease transaction are not recognized for Wisconsin franchise taxation purposes. *See International Paper Co. v. DOR*, Wis. Tax Rptr. (CCH) ¶ 203–331 (WTAC 1992), *aff'd*, Wis. Tax Rptr. (CCH) ¶ 203–383 (Dane County Cir. Ct. 1992). How-

ever, the tax benefits generated by the safe harbor leases in *International Paper* "were an integral part of the equipment in a property sense" and, as such, were recognized under Wisconsin's franchise tax. *See id.*

The commission concluded that for Wisconsin franchise tax purposes, § 71.04, STATS., 1981–82, did not preclude a deduction of Northern's amortized expenses for its purchase of tax benefits from its investment in the safe harbor leases, and decided the following IRS code section and IRS regulation permitted Northern's deduction for the payments it made to the seller/lessees:

> (a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
>
> > (1)  of property used in the trade or business, or
> > (2)  of *property held for the production of income.*

I.R.C. § 167 (emphasis added).

> **Intangibles.**—If an intangible asset is known from experience of other factors to be *of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy*, such an intangible asset may be the subject of a depreciation allowance. Examples are patents and copyrights. An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation.

Treas. Reg. § 1.167(a)–3 (emphasis added).[2] The commission also decided that the department's

---

[2] I.R.C. § 167 was incorporated into the Wisconsin franchise tax for tax years after 1972 and was also incorporated into

306

disallowance of Northern's amortization of the lease purchases was undermined by its allowance of Northern's amortized transactional expenses.

■

On appeal, the department does not specifically challenge the commission's classification of Northern's investments in the safe harbor leases as intangible assets with finite income-producing lives. Instead, the department argues that the amortization of the nearly 14 million dollars in lease purchases is impermissible because the thrust of the legislature's amendment to § 71.04(15)(b), STATS., 1981–82, was to deny deductions relating to safe harbor leases from Wisconsin tax law. There is no question that Wisconsin does not recognize safe harbor leases by this amendment. Under Wisconsin tax law, the safe harbor leases are not recognized as actual sales and leasebacks, and each seller/lessee remains the true owner of the equipment. It is important to note that Northern is not attempting to depreciate for Wisconsin tax purposes the entire purchase price of approximately 50 million dollars attributable to the underlying equipment as well as the 14 million cash payment as it was allowed to deduct for federal tax purposes. Nor is it claiming any investment credits, reporting any rental income or claiming any interest expenses. That is what the Wisconsin amendment forbids and Northern is abiding by this amendment. Instead, Northern does claim, for Wisconsin franchise tax purposes, a deduction for the amortization of its out-of-pocket costs associated with the safe harbor leases, including its investment in the leases.

Wisconsin's Administrative Code. Section 71.04(15)(a), STATS., 1981–82; WIS. ADM. CODE § TAX 1.06.

We agree with the department that for Wisconsin franchise tax purposes, § 71.04(15), STATS., 1981–82, excluded safe harbor lease deductions as otherwise allowed under I.R.C. § 168(f)(8). However, this observation does not affect the determination that Northern's costs were deductible under I.R.C. § 167, an unambiguous tax provision wholly separate from I.R.C. § 168(f)(8).

We are not persuaded by the department's argument that Wisconsin's non-recognition of safe harbor leases under I.R.C. § 168(f)(8) precludes recognition of Northern's purchase of an intangible asset, which in this case is the purchased tax benefits. We agree with the commission's reasoning that while the Wisconsin franchise tax excluded § 168(f)(8), it incorporated I.R.C. § 167 for tax years after 1972. Section 71.04(15)(a), STATS., 1981–82. IRS regulations under I.R.C. § 167 are incorporated into Wisconsin's Administrative Code. WIS. ADM. CODE, § TAX 1.06, 1.167(a)–3, permits a taxpayer to amortize the cost of an intangible asset if the asset is known from experience to be of use in the business or in the production of income for only a limited time and this time can be estimated with reasonable accuracy.

Here, Northern purchased the tax benefits in the form of a lease and when the lease ends, its ability to realize the tax benefits also ends. Therefore, the useful life of the tax benefits is the lease term, and Northern amortized the payments over this term. Additionally, purchase of these leases unquestionably results in Northern acquiring substantial economic benefits and, therefore, is clearly useful in its business and useful in producing income. Here, there is no question that Northern purchased the leases in order to defer its federal income tax obligations and thereby temporarily

free up cash for use in its business to generate income. As such, its investment in the leases with the resulting tax benefits became an income-producing asset.

The department also seems to assert that these assets are non-amortizable because Northern acquired them with an intent to obtain significant federal tax "benefits" and "savings." The department's argument suggests, without citation to supporting legal authority, that Northern's return on its income-producing investment was simply "too high" to be amortizable. We are puzzled by this argument and its relevance. If anything, it demonstrates that this was an intangible asset for Northern's use in its business. Northern concedes it purchased the safe harbor leases for the tax "benefit" of deferring its federal income tax obligations and to temporarily make cash available for other business uses. Because we conclude Northern's tax deferral was a tax "benefit," and such a deferral is the tax benefit underlying all safe harbor lease transactions, we reject the department's argument.

Therefore, we agree with the commission's interpretation and application of these unambiguous provisions to the facts. The tax benefits purchased by Northern was income-producing property, held by Northern as an intangible asset for the fixed term of the duration of each lease. As such, the amounts paid by Northern for federal tax benefits were properly amortized and deducted under I.R.C. § 167, as incorporated into Wisconsin's franchise tax.

*By the Court.*—Order affirmed.