COLUMBUS PARK HOUSING CORPORATION, Plaintiff-Respondent,

v.

CITY OF KENOSHA, Defendant-Appellant.†

Court of Appeals

*No. 02–0699. Submitted on briefs September 12, 2002.—Decided November 20, 2002.*

2002 WI App 310

(Also reported in 655 N.W.2d 495.)

† Petition to review granted 4-22-03.

320

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert I. DuMez* of *O'Connor & Willems, S.C.*, of Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David L. Kinnamon, Anthony A. Tomaselli* and *David C. Swanson* of *Quarles & Brady, LLP*, of Madison.

Before Brown, Anderson and Snyder, JJ.

¶ 1. BROWN, J. Columbus Park Housing Corporation, a nonstock, nonprofit organization that rehabilitates and provides housing for qualified low-income residents of the City of Kenosha, seeks an exemption from real property taxes pursuant to WIS. STAT. § 70.11 (1999–2000)[1] for properties it leased to low-income individuals in 1998 and 1999. In the years in question,

---

[1] Although we acknowledge that the tax years in question predate the 1999–2000 version of the Wisconsin Statutes, we have determined that any differences between the applicable

Columbus Park used all of its gains and profits for benevolent purposes and devoted all of its leasehold income to the maintenance and construction debt retirement of its leased properties. The City argues that because four of Columbus Park's properties showed a positive net income in 1999, it could not have used the leasehold income from those four properties for maintenance and debt retirement on those particular properties and therefore Columbus Park has not satisfied the dictates of § 70.11. The City also contends that because Columbus Park leases its properties to nonexempt individual tenants it does not exclusively use the properties and has not satisfied the eligibility requirements for a tax exemption.

¶ 2. We hold that WIS. STAT. § 70.11 requires an aggregate analysis of an exempt organization's use of its leasehold income and because Columbus Park used all of its rental income for maintenance and debt retirement, it has satisfied the statutory requirements. We also conclude that Columbus Park exclusively used its properties for benevolent purposes and the term "lessee" should not be so technically defined so as to preclude Columbus Park from receiving a tax exemption. We therefore affirm the trial court's judgment granting a tax exemption for the properties in question.

¶ 3. The following facts are relevant to this appeal. The parties do not contest that Columbus Park is a benevolent association within the meaning of WIS. STAT. § 70.11(4). With the exception of the rental unit the executive director of the organization occupies, Columbus Park leases the homes it has rehabilitated to low-income families who are able to pay "market rate"

statutes are immaterial for purposes of this appeal. We therefore refer to the 1999–2000 version of the Wisconsin Statutes unless otherwise noted.

rents through participation in the federal rent subsidy program under Section Eight of the Federal Fair Housing Act.

¶ 4. In 1998, Columbus Park claimed exemptions from property tax pursuant to WIS. STAT. § 70.11 for sixteen separate properties it owns. During the 1998 calendar year, none of the leased properties had a positive net income. In her affidavit, Columbus Park's executive director stated that in 1998, the organization used all of the leasehold income received from its tenants and all of the lease subsidies obtained from the United States Department of Housing and Urban Development for maintenance and construction debt retirement of the leased properties or both.

¶ 5. The City determined that Columbus Park was actively rehabilitating four of the sixteen properties and thus only those four qualified for exemptions. The City issued real estate property tax bills for the remaining twelve properties, which were leased to qualified low-income families or were substantially rehabilitated and ready for occupancy. Columbus Park did not pay the tax bills and the City treats them as delinquent.

¶ 6. In 1999, Columbus Park again claimed tax exemptions pursuant to WIS. STAT. § 70.11 for nineteen of its properties. In the 1999 calendar year, four of the leased properties had a positive net income, but the leased properties in the aggregate had a negative net income. According to the organization's executive director, in 1999 Columbus Park used all of the leasehold income received from its tenants and all of the lease subsidies acquired from the United States Department of Housing and Urban Development for maintenance of the leased properties, construction debt retirement of the leased properties, or both.

¶ 7. The City once again granted exemptions for the three properties Columbus Park was actively rehabilitating, but denied exemptions for those that tenants occupied or were rehabilitated and ready for occupancy. Columbus Park paid the property taxes under protest and filed a claim for a refund. The claim was deemed disallowed and Columbus Park commenced an action to recover the 1999 taxes and requested a declaratory judgment that the properties were exempt from taxation in 1998. The circuit court granted Columbus Park's motion for summary judgment finding that Columbus Park was a benevolent association whose properties were exempt from Wisconsin property tax for 1998 and 1999 under WIS. STAT. § 70.11 and 70.11(4). The City appeals from this judgment.

¶ 8. We review summary judgment determinations de novo, applying the same standards as the circuit court. *Ahrens v. Town of Fulton*, 2000 WI App 268, ¶ 7, 240 Wis. 2d 124, 621 N.W.2d 643, *aff'd*, 2002 WI 29, 251 Wis. 2d 135, 641 N.W.2d 423. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

¶ 9. Because the parties do not dispute the facts, the only issues before us require construction of WIS. STAT. § 70.11. The construction of statutes is a question of law. *Trustees of Ind. Univ. v. Town of Rhine*, 170 Wis. 2d 293, 298, 488 N.W.2d 128 (Ct. App. 1992). Similarly, the application of a statute to an undisputed set of facts presents a question of law. *Id.* We review questions of law independently and without deference to the conclusions reached by the circuit court. *Id.* at 299.

324

¶ 10. In Wisconsin, the taxation of property is the rule and exemption from taxation is the exception. *Id.* at 299. Generally, we apply a "strict but reasonable construction" to tax-exemption statutes. *Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 80, 591 N.W.2d 583 (1999). Because exemption from the payment of taxes is an act of legislative grace, the burden of showing that the property in question is exempt from taxation is on the party claiming the exemption, and the court is to resolve all doubts against the exemption and in favor of taxability. *First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251 (1977).

¶ 11. Columbus Park seeks an exemption from real property taxes for the years 1998 and 1999, claiming that it is entitled to such under WIS. STAT. § 70.11(4). The pertinent statutory language is as follows:

> **70.11 Property exempted from taxation.** The property described in this section is exempted from general property taxes .... Leasing a part of the property described in this section does not render it taxable if the lessor uses all of the leasehold income for maintenance of the leased property, construction debt retirement of the leased property or both and if the lessee would be exempt from taxation under this chapter if it owned the property ....
>
> **(4)** EDUCATIONAL, RELIGIOUS AND BENEVOLENT INSTITUTIONS; WOMEN'S CLUBS; HISTORICAL SOCIETIES; FRATERNITIES; LIBRARIES. Property owned and used exclusively by ... benevolent associations ... but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit ....

Our supreme court has stated that in order to qualify for an exemption under § 70.11(4), an organization must show three facts: (1) that it is a benevolent organization, (2) that it owns and exclusively uses the property, and (3) that it uses the property for exempt purposes. *Deutsches Land*, 225 Wis. 2d at 82. Where an exempt organization leases a portion of its properties, it must also satisfy the two additional eligibility requirements set forth in the preamble of the statute. *Id.* at 93.

¶ 12. The City stipulates that Columbus Park is a benevolent association within the meaning of Wis. Stat. § 70.11(4). Therefore, according to our supreme court's construction of § 70.11 we must address two issues: (1) Did Columbus Park exclusively use the properties for benevolent purposes? (2) Did Columbus Park satisfy the eligibility requirements for an exemption of its properties under the preamble to § 70.11?

¶ 13. Whether property for which a benevolent organization seeks a tax exemption is "used exclusively" by the benevolent organization is a fact-specific question, which can be answered only on a case-by-case basis. *See Deutsches Land*, 225 Wis. 2d at 84. The City argues that Columbus Park has not satisfied the "used exclusively" requirement of Wis. Stat. § 70.11(4) because the tenants, and not Columbus Park itself, make exclusive physical use of the property. In support of its argument, the City cites *Dominican Nuns v. City of La Crosse*, 142 Wis. 2d 577, 419 N.W.2d 270 (Ct. App. 1987), which defines "exclusive use" as "physically employ[ing] the tangible characteristics of the property." *See id.* at 580.

¶ 14. The City's reliance on *Dominican Nuns* is misplaced. First, the facts are distinguishable. There, the religious order had vacated the property, listed it for

sale, and permanently relocated elsewhere. *Id.* at 581. We concluded that because the property was not used for any of the order's regular activities or benevolent purposes and in fact was "wholly vacant and unoccupied," the property was no longer "used exclusively" by the order within the meaning of Wis. STAT. § 70.11(4). *Dominican Nuns*, 142 Wis. 2d at 581. This is not the situation before us. Columbus Park has not vacated the properties; it leases the properties to its low-income tenants in furtherance of its charitable mission.

¶ 15. Second, in *Deutsches Land*, our supreme court clarified the apposite inquiry for determining whether a nonprofit organization qualifies for an exemption. *Deutsches Land* teaches that in order to satisfy the dictates of Wis. STAT. § 70.11(4), a tax-exempt organization must demonstrate that it both owned the property and used the property exclusively for benevolent purposes. *Deutsches Land*, 225 Wis. 2d at 88 (citing *Dominican Nuns* for support of this interpretation of § 70.11(4)). The organization claiming the exemption bears the burden of showing its actual benevolent uses of its properties. *See Deutsches Land*, 225 Wis. 2d at 88. Thus, when determining whether an exempt organization's real property satisfies the exclusive use requirement of the statute, the court must focus on the correlation between the entity's actual uses of the property and its benevolent tax-exempt purposes.

¶ 16. Columbus Park's rental of its properties bears a direct relationship to its benevolent purposes. Its mission is to improve the living conditions of the poor and underprivileged in the city by providing and maintaining safe, decent and affordable housing. By

leasing its properties to its qualified low-income tenants, Columbus Park is fulfilling this mission. Columbus Park charges its tenants rent based upon their ability to pay and receives the remainder of the rent by participating in the federal rent subsidy program under Section Eight of the Federal Fair Housing Act. Columbus Park uses all gains or profits from the properties exclusively for the benevolent purposes of the organization. Further, Columbus Park relies upon at-risk groups within the community to perform the labor for the rehabilitation of the properties. We therefore conclude that Columbus Park has met its burden of showing that it exclusively used the properties in question for benevolent purposes in both 1998 and 1999.

¶ 17. The City next argues that Columbus Park failed to satisfy the eligibility requirements for tax exemption under the preamble to WIS. STAT. § 70.11. In construing the preamble and the relevant subsection, our supreme court has held that an exempt organization may lease a part of its property and still be exempt from property taxes on that leased portion so long as the following conditions are met: (1) the exempt organization must use the leasehold income for maintenance of the property, construction debt retirement, or both and (2) the lessee would itself be entitled to an exemption if it owned the property. *Deutsches Land,* 225 Wis. 2d at 93. If an exempt organization fails either the rent use or the lessee identity conditions, it loses its tax-exempt status on the leased portion of its properties. *Id.* at 94.

¶ 18. We first address the City's contention that Columbus Park has not satisfied the preamble's rent use condition. The City granted tax exemptions for the properties under rehabilitation, but denied exempt status to all of the properties Columbus Park had already leased. The parties stipulated that in 1998 and 1999, Columbus Park did not show a positive net income on its leased properties taken together. In her affidavit, Columbus Park's executive director asserted that the organization used all of its leasehold income for maintenance and debt retirement for its properties for both 1998 and 1999. The City did not refute her assertion. Rather, the City seems to contend on appeal that because four of Columbus Park's properties had a positive net income in 1999, the leasehold income from the four individual properties could not have been used for maintenance or debt reduction on those specific properties and thus Columbus Park is not entitled to a tax exemption on any of its leased properties for that year.[2]

---

[2] The City cites to *Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 591 N.W.2d 583 (1999), for this proposition; however, the court in *Deutsches Land* disposed of the matter without squarely addressing the issue with which we are presented. The pertinent portion of the court's discussion in *Deutsches Land* concerned a benevolent organization that entered into an oral lease with a for-profit entity for one part of its property. *See id.* at 88. Because the benevolent organization had not provided sufficient evidence of its exempt use of the property, the court did not reach the question of whether the organization had used all of its rental income for maintenance and construction debt retirement. *See id.* at 96–99.

¶ 19. The language of the preamble to WIS. STAT. § 70.11 is straightforward. It requires an exempt organization to use all of the leasehold income it receives strictly for maintenance of the property it leases and construction debt retirement of that property. *See* § 70.11(4). Obviously, if an organization uses the income for any other purpose, it loses the property tax exemption. *Deutsches Land*, 225 Wis. 2d at 93–94.

¶ 20. However, statutory language unambiguous on its face can sometimes be rendered ambiguous by the context in which it is sought to be applied. *State v. Ramirez*, 2001 WI App 158, ¶ 12, 246 Wis. 2d 802, 633 N.W.2d 656, *review denied*, 2001 WI 114, 246 Wis. 2d 176, 634 N.W.2d 321 (Wis. Aug. 27, 2001) (No. 00–2605–CR). If the statutory language is unclear or ambiguous, the court may look to the scope, history, context, subject matter and object of the statute to determine the legislative intent. *State v. Head*, 2002 WI 99, ¶ 82, 255 Wis. 2d 194, 648 N.W.2d 413. It is not altogether clear from the four corners of the statute whether the legislature intended for the rent use condition to be applied to each individual leased property as the City appears to argue or to a tax-exempt organization's leasehold property in the aggregate. We therefore look beyond the plain language of the statute to determine the legislature's intent.

¶ 21. Wisconsin has long exempted from taxation the real property of a benevolent association used exclusively for benevolent purposes and not for profit. *Milwaukee Protestant Home for the Aged v. City of Milwaukee*, 41 Wis. 2d 284, 292, 164 N.W.2d 289 (1969). However, the court has not required that tax-exempt organizations operate at a loss. The court has recognized the gain or profit that destroys the benevolent

330

nature and character of the institution is profit to someone other than the benevolent institution itself. *Id.* at 297. As the court observed in *Order of the Sisters of St. Joseph v. Town of Plover*, 239 Wis. 278, 283–84, 1 N.W.2d 173 (1941):

> The respondent's claim is to the effect that the River Pines Sanatorium should be taxed on the ground that it aims to operate at a profit . . . . [A]ll benevolent institutions endeavor so to operate. But as the profit made by these institutions, if any, is payable to nobody, but is only turned back into improving facilities or extending the benevolence in which the institutions are primarily engaged, the profit element becomes immaterial.

Thus, it is the organization's use of the properties and their profits and not whether an individual property earns a profit that has been the focus of the court's inquiries.

¶ 22. In construing the rent use condition, our supreme court seems to indicate that the focus should be on the organization's use of the leasehold income, "[i]f the exempt *organization* uses the rental income in ways other than [for maintenance or debt retirement], no exemption can be claimed on the leased part of the property." *Deutsches Land*, 225 Wis. 2d at 93 (emphasis added). The court appears to be addressing the concern that the organization would earn a profit and then use the income for purposes unrelated to its benevolent use of the property. Thus, the proper inquiry is not whether an individual property shows a profit, but rather, it is whether the benevolent organization earns a profit from all of its leasehold property and fails to use the income for the specified exempt purposes. We therefore

hold the preamble's rent use condition requires an aggregate analysis of the tax-exempt entity's use of its leasehold income.

¶ 23. This conclusion is consistent with the basic purpose and objective of the Wisconsin tax-exemption statute. In *Catholic Woman's Club v. City of Green Bay*, 180 Wis. 102, 104, 192 N.W. 479 (1923), our supreme court set forth the statute's objective and purpose:

> The statute of exemptions for taxation . . . is not difficult of construction. Its intent is plain. It would encourage benevolence, charity, religion, education, and fraternity. It recognizes these qualities of mind and character as essential to a well-ordered state whose principal object is the general welfare or common good. [Catholic Woman's Club] is a corporation engaged in promoting charity, benevolence, education, and fraternity—not one but nearly all of the objects of the statute. Its property has been wholly acquired by charitable gifts. It makes no profits for any purpose. Its receipts are all devoted to its general purposes above enumerated. No dividend has ever been declared, nor is any in contemplation.
>
> To deny that the [Catholic Woman's Club] comes within the statute of exemptions [WIS. STAT. § 70.11(4)] is to deny the purpose of the statute.

The purpose of the statute, the promotion of charitable activities, is defeated only where a tax-exempt organization is permitted to earn a profit on its properties and use the profit for activities unrelated to its benevolent purposes. Where a tax-exempt organization does not profit from its properties in the aggregate and uses all receipts for exempt purposes, the fact that the organization realizes some margin of income in leasing an

individual property and still retains its tax-exempt status does not militate against the objectives underlying the statute, but rather, upholds them.

¶ 24. We now turn to the facts of this case. Columbus Park leases all of its properties solely in furtherance of its exempted benevolent activities. Columbus Park endeavors to improve the living conditions of Kenosha's poor and underprivileged by directly leasing the rehabilitated homes to its low-income tenants who otherwise could not afford decent housing. Despite the positive net income shown on four of its properties, Columbus Park does not earn a profit by leasing its properties overall and devotes all of its rental income to the maintenance and debt retirement of all the properties it leases. If the City wished to challenge this fact, it should have filed an affidavit refuting Columbus Park's assertions.[3] We therefore hold that Columbus Park has demonstrated that it satisfied the rent use element of the preamble to WIS. STAT. § 70.11.

¶ 25. The final issue we address is the City's argument that Columbus Park failed to satisfy the lessee identity prong of the preamble because its individual tenants would not be entitled to an exemption if they owned the property. Columbus Park acknowledges that its low-income tenants, who are not tax-exempt organizations, sign the leases, but counters that be-

---

[3] The City did not refute the executive director's statements by a counteraffidavit. Evidentiary matters in affidavits accompanying a motion are deemed uncontested when competing evidentiary facts are not set forth in counteraffidavits. *Wis. Elec. Power Co. v. Cal. Union Ins. Co.*, 142 Wis. 2d 673, 684, 419 N.W.2d 255 (Ct. App. 1987).

cause the Kenosha Housing Authority exerts pervasive control over its rentals, the Authority is the tenant in fact, which as a governmental entity would be entitled to the property tax exemption.[4]

¶ 26. While we agree with the City that the Authority is not the true lessee of the properties within the technical definition of the term, the Authority's control is a relevant consideration in making a determination as to the ability of Columbus Park to qualify for an exemption. The strong interplay between the Authority and Columbus Park results in the ability of the low-income tenants to rent the homes. Columbus Park charges the tenants an amount of rent based upon their ability to pay, which is currently thirty percent of the occupant's income as determined by the United States Department of Housing and Urban Development. The Authority then pays to Columbus Park federal government subsidies, which bring the rents up to "market rates" as defined by the federal government. Columbus Park's tenants would not be able to rent the properties but for the Authority's subsidies. Even though the name on the lease is that of the low-income tenant, to

---

[4] Columbus Park points out: The Authority: (1) requires new tenants of publicly-subsidized housing in the City to attend an orientation session that the Authority holds, (2) issues vouchers to income-qualified tenants that allows them to participate in the Section 8 housing program, (3) conducts an initial inspection of any Columbus Park rental unit selected by an income-qualified tenant to ensure compliance with applicable minimum housing standards, (4) conducts an annual inspection of Columbus Park's Section 8 rental units to ensure compliance with applicable minimum housing standards, (5) requires reports to be made by Section 8 tenants directly to the Authority showing any changes in monthly income, and (6) makes monthly adjustments to Section 8 tenants' rent subsidies based on changes in their income.

pretend that Columbus Park's tenants are independent lessees ignores the role of the Authority in administering and subsidizing the tenants.

¶ 27.　To apply the City's strict interpretation under the facts of this case would frustrate and defeat the legislative purpose in granting tax exemptions to benevolent associations such as Columbus Park and its intent in creating the lessee identity condition. In construing this portion of the preamble, our supreme court noted, "if the lessee itself is not an exempt organization but rather a for-profit organization, no exemption can be claimed on the leased part of the property." *Deutsches Land*, 225 Wis. 2d at 93. *Deutsches Land* seems to suggest that the "lessee" the statute is addressing is a for-profit entity, which presumably would not be using the property for benevolent purposes.

¶ 28.　This is not a case where a for-profit lessee is occupying the property or the nonprofit entity is entering into the leases for pecuniary gain. Columbus Park rehabilitates homes and leases them to provide shelter to low-income individuals in furtherance of its tax-exempt benevolent purposes. The record demonstrates that Columbus Park derives no economic benefit or profit from its activities. The lessees in this instance do not pay "market rate" rents and could not even lease the properties without the assistance of the federal government.

▉▉▉.

¶ 29.　Although statutes conferring tax exemptions are to be strictly construed, the construction must be reasonable. *Friendship Village v. City of Milwaukee*, 181 Wis. 2d 207, 219–20, 511 N.W.2d 345 (Ct. App. 1993). It would be an unreasonable construction of the term "lessee" in the context of this statute to apply it to

the very individuals who are the objects of the tax-exempt activity. Consequently, we conclude that the term "lessee" should not be so technically defined so as to preclude the applicability of the tax exemption to Columbus Park. We therefore affirm the decision of the trial court and hold that Columbus Park is entitled to tax exemptions for the properties in question.

*By the Court.*—Judgment affirmed.

¶ 30. SNYDER, J. (*dissenting*). The majority decision, in essence, holds the City hostage to the accounting practices of a benevolent association. Because a straightforward reading of the statutes requires a reversal of the trial court's decision, I respectfully dissent.

¶ 31. As the majority correctly noted, the taxation of property is the rule and exemption is the exception. *Trustees of Ind. Univ. v. Town of Rhine*, 170 Wis. 2d 293, 299, 488 N.W.2d 128 (Ct. App. 1992). Tax exemption statutes are matters of legislative grace and must be strictly construed against the granting of an exemption. *St. Clare Hosp. of Monroe, Wis., Inc. v. City of Monroe*, 209 Wis. 2d 364, 369, 563 N.W.2d 170 (Ct. App. 1997).

¶ 32. The majority inexplicably concludes that, despite the use of "property" in the singular, the statute is ambiguous as to whether the legislature intended its application to each individual property or all the property owned by the benevolent organization in the aggregate. Such a construction renders the application of the statute captive to the accounting methods utilized by the benevolent organization and would create inconsistent rules. A cardinal rule of statutory construction is that statutes must be construed to avoid an absurd or unreasonable result. *State v. Mendoza*, 96 Wis. 2d 106, 115, 291 N.W.2d 478 (1980). Subjecting a

city's ability to tax an individual real estate parcel to a benevolent organization's overall accounting practices creates an absurd or unreasonable result. Furthermore, an ambiguous statute must be strictly construed against granting an exemption. *DOR v. N. States Power Co.*, 212 Wis. 2d 300, 305, 571 N.W.2d 676 (Ct. App. 1997). If WIS. STAT. § 70.11 is ambiguous, it might be construed against Columbus Park in favor of the City.

¶ 33. In addition, in order to qualify for an exemption under WIS. STAT. § 70.11(4), an organization must demonstrate three factors: (1) that it is a benevolent organization; (2) that it owns and exclusively uses the property; and (3) that it uses the property for exempt purposes. *Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 82, 591 N.W.2d 583 (1999). The last requirement, that the property be used for tax-exempt purposes, is met by demonstrating that (1) the exempt organization uses the leasehold income for maintenance of the property, construction debt retirement, or both and (2) the lessee would itself be entitled to an exemption if it owned the property. *Id.* at 93. The latter requirement has not been established here by Columbus Park.

¶ 34. Columbus Park directly leases its rehabilitated homes to low-income tenants. Columbus Park acknowledges that its low-income tenants are not tax-exempt organizations. However, the majority holds that the Kenosha Housing Authority's role in administering and subsidizing the tenants elevates it to lessee status sufficient to satisfy the above requirement that the lessee be entitled to a tax exemption if it owned the property. The majority cites no authority for such an assumption. The only names on the leases are those of the low-income tenants, not the Kenosha Housing Authority. The majority opinion acknowledges that the

337

Kenosha Housing Authority is not the true lessee of the properties within the technical definition of the word. I fail to see how the Housing Authority's role in administering and subsidizing the tenants confers "lessee" status upon it.