(97 CV 438J)

Richard AHRENS, Shirley Ahrens, Robert Albright, Shirley Albright, Barbara Allen, Nicholas Allen, Dolores Allen, June Ann Amell, Arnold Anderson, Loraine Anderson, John Augustyniak, Margaret Augustyniak, Milton Bates, Helen Bates, Robert Bauer, Gail Bauer, David Bear, Karen Bear, Michael Bellettiere, Pat Bellettiere, Otto Benz, Glen Black, Melaine Black, Edward Blanchard, Jane Blanchard, Kathy Blazyk, Nordine Bolstad, Nancy Bolstad, Jim Booker, Diana Booker, Virginia Boswell, Robert Boszko, Kathy Boszko, Donald Brake, Mary Brake, Albert Brueggeman, Mary Ann Brueggeman, Fred Burrow, Rosemary Burrow, Wallace Campbell, Donald Childers, Robert Clark, Ilona Clark, Gary Curry, Sandra Curry, Donald Dahlke, Lyla Dahlke, Emery DeRosier, Luvern DeRosier, M.A. DiMarcantonio, Thomas Draws, Vernon Duessing, Dean Eveland, Donna Eveland, Lewis Farmer, Kathleen Farmer, Louis Finger, Loretta Finger, Robert Fisher, Jean Fisher, Mike Foley, Mary Lou Foley, Charles Foudray, Milly Foudray, Diane Franke, Bill Neff, Wayne Frantz, Janet Frantz, John Fritz, Paul Gauer, Sandy Gauer, Gene Gehrt, Jane Gehrt, Antonino Giardina, Rose Giardina, Frank Giardina, Donald Ginchoff, Patricia Ginchoff, Sandra Goff, Kenneth Gray, Jane Gray, Richard Gross, Jane Gross, Wilbur Groth, Lois Groth, Caroline Gruner, Joe Gruspier, Alice Gruspier, Donna Gurholt, Robert Hanlon, Shirley Hanlon, William Hefka, Gail Hefka, Donald Heidner, Helen Heidner, Jack Hill, Mary K. Hill, Edward Hinchley, Marge Hinchley, Darwin Hoefs,

124

Judy Hoefs, Bill Hoke, Rita Hoke, Philip Howard, Helen Howard, Albert Huber, Arlene Huber, Dean Huffstutler, Jinny Huffstutler, Craig Hughes, Sandra Hughes, Edward Hughes, Marlene Hughes, Terry Hurm, Susan Hurm, Lenard W. Jendal, Edith Jendal, Herman L. Johnson, Mary Kane, Edward Kaszubowski, Steven Kostakos, Francis Kozina, Maryellen Kozina, Walter Kruszynski, Loretta Kruszynski, Joseph Kucher, Ruth Kucher, Elaine LaPlant, William Linde, Timothy Liv, Christine Liv, Mike Lockard, Tina Lockard, Richard Lowe, Dawn Lowe, Ralph Lussier, Theresa Lussier, James Lytle, Rita Lytle, Donald Mason, Barbara Mason, Marshall Matijevich, C. James Mayer, Betty Mayer, James McCarthy, Elizabeth McCarthy, Albert McGraw, Evelyn McGraw, Thomas McGuire, Howard McIntosh, Rosetta McIntosh, William A. Meinzer, Marion Melzer, Joseph Michalowski, Rose Michalowski, Raymond Murphy, Lillian Murphy, Walter Mysliwiec, Marcia Mysliwiec, Clarence Negus, Imelda Negus, Edwin Nelson, Carl Nickel, Jack Niemann, Linda Niemann, Marion Obukowicz, Grace Obukowicz, Patricia Olson, Michael Parsons, Linda Parsons, Thomas Peterson, Diane Peterson, Craig Pearson, JoAnn Pearson, Melvin Peterson, Ruth Peterson, William Pflanz, Jackie Pflanz, Leonard Pflughaupt, Caryl Pflughaupt, Wallace Phillips, Carolyn Phillips, Donald Pierce, Jeanne Pierce, Phillip Piotrowski, Deborah Piotrowski, Leonard Piejda, Mary Piejda, Brian Pluta, Kathryn Pluta, Homer Proctor, Joyce Proctor, Michael Rausch, Richard Renaud, Vincenette Renaud, Wayne Rice, Dolores Rice, John Riley, Annette Riley, Norman Rippberger, Barbara Rippberger, Dale Rogers, Eugene Romanski, Ilene Romanski, James Rother, Hugh Ryan, Carl Schimka,

Roman Schmidt, Nancy Schmidt, Clarence Schultz, Joyce Schultz, Warren Schultz, Harriet Schultz, T. George Schumert, Lemke Schurmann, Glenn Shelley, Robert Short, Rosa Short, Gary Shulz, Carol Shulz, Louis D. Simmons, Lillian Simmons, George C. Sims, Jr., Marvin E. Smith, Ronald Solner, Ray Staley, Beverly Staley, Frank Stefaniak, Londine Stefaniak, Milan Sulaver, Corinne Sulaver, Joseph Szamlewski, Barbara Szamlewski, Wesley Tanner, Carmelia Tanner, Ronald Theis, Jean Theis, Martin Tivador, Doris Tivador, Stephen Tobolic, Charles Ulam, Josephine Ulam, David Wallestad, Joyce Wallestad, Lloyd Weber, Thomas Weinmann, Madeline Weinmann, Harry Whitney, Donna Whitney, Robert Wirt, Jr., Robert Wirt, Sr., Marilyn Wirt, Jyles Womack, Lynn Womack, Hubert J. Wright, Mary Wright, Jerome Young, Fay Young and Anthony Zappia, Plaintiffs-Appellants,†

v.

TOWN OF FULTON, Defendant-Respondent.

(96 CV 303J)

Richard AHRENS, Shirley Ahrens, Robert Albright, Shirley Albright, Barbara Allen, Nicholas Allen, Dolores Allen, June Ann Amell, Arnold Anderson, Lorraine Anderson, John Augustyniak, Margaret Augustyniak, Milton Bates, Helen Bates, Robert Bauer, Gail Bauer, David Bear, Karen Bear, Otto Benz, Glen Black, Melaine Black, Kathy Blazyk, Nordine Bolstad, Nancy Bolstad, Jim Booker, Diana Booker, Virginia Boswell, Robert Boszko, Kathy

†Petition to review granted.

Boszko, Donald Brake, Mary Brake, Albert Brueg-
geman, Mary Ann Brueggeman, Fred Burrow,
Rosemary Burrow, Wallace Campbell, Donald
Childers, Robert Clark, Ilona Clark, Gary Curry, San-
dra Curry, Donald Dahlke, Lyla Dahlke, Emery
DeRosier, Luvern DeRosier, M.A. DiMarcantonio,
Thomas Draws, Vernon Duesing, Lewis Farmer,
Kathleen Farmer, Louis Finger, Loretta Finger,
Robert Fisher, Jean Fisher, Charles Foudray, Milly
Foudray, Bill Neff, Diane Franke, Wayne Frantz,
Janet Frantz, John Fritz, Paul Gauer, Sandy Gauer,
Gene Gehrt, Jane Gehrt, Antonino Giardina, Rose
Giardina, Frank Giardina, Donald Ginchoff, Patricia
Ginchoff, Sandra Goff, Kenneth Gray, Jane Gray,
Richard Gross, Jane Gross, Wilbur Groth, Lois Groth,
Joe Gruspier, Alice Gruspier, Donna Gurholt, Robert
Hanlon, Shirley Hanlon, William Hefka, Gail Hefka,
Donald Heidner, Helen Heidner, Jack Hill, Mary K.
Hill, Edward Hinchley, Marge Hinchley, Darwin
Hoefs, Judy Hoefs, Bill Hoke, Rita Hoke, Philip
Howard, Helen Howard, Albert Huber, Arlene Huber,
Dean Huffstutler, Jinny Huffstutler, Edward Hughes,
Sandra Hughes, Edward Hughes, Marlene Hughes,
Terry Hurm, Susan Hurm, Lenard Jendal, Edith
Jendal, Herman L. Johnson, Mary Kane, Edward Kas-
zubowski, Steven Kostakos, Francis Kozina,
Maryellen Kozina, Walter Kruszynski, Loretta Krus-
zynski, Joseph Kucher, Ruth Kucher, Elaine LaPlant,
William Linde, Timothy Liv, Christine Liv, Ralph
Lussier, Theresa Lussier, James Lytle, Rita Lytle,
Donald Mason, Barbara Mason, Marshall Matjevich,
C. James Mayer, Betty Mayer, James McCarthy,
Elizabeth McCarthy, Albert McGraw, Evelyn
McGraw, Thomas McGuire, William A. Meinzer, Bur-
ness Melton, Juanita Melton, Marion Melzer, Joseph

Michalowski, Rose Michalowski, Raymond Murphy, Lillian Murphy, Walter Mysliwiec, Marcia Mysliwiec, Clarence Negus, Imelda Negus, Edwin Nelson, Carl Nickel, Jack Niemann, Linda Niemann, Marion Obukowicz, Grace Obukowicz, Willard Parejko, Michael Parsons, Linda Parsons, Thomas Peterson, Diane Peterson, William Pflanz, Jackie Pflanz, Leonard Pflughaupt, Caryl Pflughaupt, Wallace Phillips, Carolyn Phillips, Donald Pierce, Jeanne Pierce, Brian Pluta, Kathryn Pluta, Michael Rausch, Richard Renaud, Vincenette Renaud, Wayne Rice, Dolores Rice, John Riley, Annette Riley, Norman Rippberger, Barbara Rippberger, Dale Rodgers, Eugene Romanski, Ilene Romanski, James Rother, Hugh Ryan, Carl Schimka, Roman Schmidt, Nancy Schmidt, Clarence Schultz, Joyce Schultz, Warren Schultz, Harriet Schultz, George T. Shumert, Glen Shelley, Robert Short, Rosa Short, Gary Shulz, Carol Shulz, Louis D. Simmons, Lillian Simmons, George C. Sims, Jr., Marvin Smith, Ronald Solner, Ray Staley, Beverly Staley, Frank Stefaniak, Londine Stefaniak, Milan Sulaver, Corinne Sulaver, Joseph Szamlewski, Barbara Szamlewski, Wesley Tanner, Carmelia Tanner, Ronald Theis, Jean Theis, Martin Tivador, Doris Tivador, Stephen Tobolic, Charles Ulam, Josephine Ulam, David Wallestad, Joyce Wallestad, Lloyd Weber, Harry Whitney, Donna Whitney, Robert Wirt, Jr., Robert Wirt, Marilyn Wirt, Jyles Womack, Lynn Womack, Hubert J. Wright, Mary Wright, Jerome Young, Fay Young and Anthony Zappia, Plaintiffs-Appellants,†

v.

TOWN OF FULTON, Defendant-Respondent.

†Petition to review granted.

128

(98 CV 422)

Richard AHRENS, Shirley Ahrens, Robert Albright, Shirley Albright, Barbara Allen, Nicholas Allen, Dolores Allen, June Ann Amell, Arnold Anderson, Lorraine Anderson, John Augustyniak, Margaret Augustyniak, Milton Bates, Helen Bates, Robert Bauer, Gail Bauer, David Bear, Karen Bear, Michael Bellettiere, Pat Bellettiere, Otto Benz, Glen Black, Melanie Black, Edward Blanchard, Jane Blanchard, Kathy Blazyk, Nordine Bolstad, Nancy Bolstad, Jim Booker, Diana Booker, Virginia Boswell, Robert Boszko, Kathy Boszko, Donald Brake, Mary Brake, Albert Brueggeman, Mary Ann Brueggeman, Fred Burrow, Rosemary Burrow, Wallace Campbell, Donald Childers, Robert Clark, Ilona Clark, Gary Curry, Sandra Curry, Donald Dahlke, Lyla Dahlke, Emery DeRosier, Luvern DeRosier, M.A. DiMarcantonio, Thomas Draws, Vernon Duesing, Dean Eveland, Donna Eveland, Lewis Farmer, Kathleen Farmer, Louis Finger, Loretta Finger, Robert Fisher, Jean Fisher, Mike Foley, Mary Lou Foley, Charles Foudray, Milly Foudray, Bill Neff, Diane Franke, Wayne Frantz, Janet Frantz, John Fritz, Paul Gauer, Sandy Gauer, Gene Gehrt, Jane Gehrt, Antonio Giardina, Rose Giardina, Frank Giardina, Donald Ginchoff, Patricia Ginchoff, Sandra Goff, Kenneth Gray, Jane Gray, Richard Gross, Jane Gross, Wilbur Groth, Lois Groth, Caroline Gruner, Joe Gruspier, Alice Gruspier, Donna Gurholt, Robert Hanlon, Shirley Hanlon, William Hefka, Gail Hefka, Donald Heidner, Helen Heidner, Jack Hill, Mary K. Hill, Edward Hinchley, Marge Hinchley, Darwin Hoefs, Judy Hoefs, Bill Hoke, Rita Hoke, Phillip Howard, Helen Howard, Albert Huber, Arlene Huber, Dean

Huffstutler, Jinny Huffstutler, Craig Hughes, Sandra Hughes, Edward Hughes, Marlene Hughes, Terry Hurm, Susan Hurm, Lenard W. Jendal, Edith Jendal, Herman L. Johnson, Mary Kane, Edward Kaszubowski, Steven Kostakos, Dr. Francis Kozina, Maryellen Kozina, Walter Kruszynski, Loretta Kruszynski, Joseph Kucher, Ruth Kucher, Elaine LaPlant, William Linde, Timothy Liv, Christine Liv, Mike Lockard, Tina Lockard, Richard Lowe, Dawn Lowe, Ralph Lussier, Theresa Lussier, James Lytle, Rita Lytle, Donald Mason, Barbara Mason, Marshall Matijevich, C. James Mayer, Betty Mayer, James McCarthy, Elizabeth McCarthy, Albert McGraw, Evelyn McGraw, Thomas McGuire, Howard McIntosh, Rosetta McIntosh, William A. Meinzer, Burness Melton, Juanita Melton, Marion Melzer, Joseph Michalowski, Rose Michalowski, Raymond Murphy, Lillian Murphy, Walter Mysliwiec, Marcia Mysliwiec, Clarence Negus, Imelda Negus, Edwin Nelson, Carl Nickel, Jack Niemann, Linda Niemann, Marion Obukowicz, Grace Obukowicz, Patricia Olson, Willard Parejko, Michael Parsons, Linda Parsons, Thomas Peterson, Diane Peterson, Craig Pearson, JoAnn Pearson, Melvin Peterson, Ruth Peterson, William Pflanz, Jackie Pflanz, Leonard Pflughaupt, Caryl Pflughaupt, Wallace Phillips, Carolyn Phillips, Donald Pierce, Jeanne Pierce, Phillip Piotrowski, Deborah Piotrowski, Leonard Piejda, Mary Piejda, Brian Pluta, Kathryn Pluta, Homer Proctor, Joyce Proctor, Michael Rausch, Richard Renaud, Vincenette Renaud, Wayne Rice, Dolores Rice, John Riley, Annette Riley, Norman Rippberger, Barbara Rippberger, James Rother, Roman Schmidt, Nancy Schmidt, Clarence Schultz, Joyce Schultz, Warren Schultz, Harriet Schultz, Lemke Schurmann, Glenn Shelley, Marvin E. Smith,

Wesley Tanner, Carmelia Tanner, Martin Tivador, Doris Tivador, Stephen Tobolic, Lloyd Weber, Harry Whitney, Donna Whitney, Robert Wirt, Jr., Robert Wirt, Marilyn Wirt, Jyles Womack, Lynn Womack, Hubert J. Wright, Mary Wright, Jerome Young, Fay Young and Anthony Zappia, Plaintiffs-Appellants,†

v.

TOWN OF FULTON, Defendant-Respondent.

Court of Appeals

*No. 99–2466. Submitted on briefs May 19, 2000.—Decided November 16, 2000.*

2000 WI App 268

(Also reported in 621 N.W.2d 643.)

†Petition to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Dianne M. Soffa* and *Russell W. Devitt* of *Soffa & Devitt,* Whitewater.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Meg Vergeront* of *Stafford Rosenbaum LLP,* Madison.

Before Dykman, P.J., Deininger, J., and William Eich, Reserve Judge.

¶ 1. DEININGER, J. Richard Ahrens, and numerous other owners of mobile homes located on individually owned lots in a Rock County subdivision, appeal a judgment dismissing their action to recover allegedly unlawful property taxes levied by Fulton Township. The trial court granted the Town's summary judgment motion after concluding that, even if the mobile homes in question were improperly classified as real property, they would have been subject to personal property taxes in the same amount as the real property taxes levied by the Town. We conclude that most of the mobile homes at issue were properly classified as real property, and that at least one that was improperly classified did not qualify for exemption from personal property taxes. We thus affirm the judgment dismissing the claims of the owners of these mobile homes. However, because we interpret the requirements of the statutory exemption differently than did the trial court, we reverse the appealed judgment in part and remand for a consideration of

135

whether any of the remaining owners can establish entitlement to the exemption.

## BACKGROUND

¶ 2. A "mobile home" is defined by statute as a structure "that . . . is, or was as originally constructed, designed to be transported by any motor vehicle upon a public highway and designed, equipped and used primarily for sleeping, eating and living quarters, or is intended to be so used; and includes any additions, attachments, annexes, foundations and appurtenances." WIS. STAT. § 66.058(1)(d) (1997–98).[1] Mobile homes in Wisconsin may be taxed as real property, or as personal property, or they may be exempt from property taxes altogether, depending on such things as their location, physical support and size.

> (1) A mobile home, as defined in s. 66.058(1)(d), is an improvement to real property if it is connected to utilities and is set upon a foundation upon land which is owned by the mobile home owner. In this section, a mobile home is "set upon a foundation" if it is off its wheels and is set upon some other support.
> (2) A mobile home, as defined in s. 66.058(1)(d), is personal property if the land upon which it is located is not owned by the mobile home owner or if the mobile home is not set upon a foundation or connected to utilities.

WIS. STAT. § 70.043. However, mobile homes "that are no larger than 400 square feet and that are used primarily as temporary living quarters for recreational,

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

camping, travel or seasonal purposes" are exempted from general property taxes. WIS. STAT. § 70.111(19)(b).

¶ 3. The plaintiffs are the owners of "approximately 138 separate lots" in a subdivision known as Wisconsin's Rock River Leisure Estates. They commenced three separate actions challenging the lawfulness of real property taxes the Town had levied on mobile homes situated on their lots for the years 1995, 1996 and 1997. The three actions were consolidated, and the parties stipulated that the facts pertaining to the mobile homes of twenty plaintiffs would be deemed to be representative of all plaintiffs for purposes of the Town's summary judgment motion.

¶ 4. The parties' stipulation provides the following facts regarding these twenty plaintiffs. Each of them has on his or her lot a "basic unit" consisting of a "structure that is, or was as originally constructed, designed to be transported by any motor vehicle upon a public highway and designed, equipped and used primarily for sleeping, eating, and living quarters." The floor area of these "basic units" ranges from 372 to 420 square feet, with all but one of the twenty being 400 square feet or less. Wheels remain on each of the basic units, and with three exceptions, the weight of the units "is at least partially on these wheels." The remaining weight of the units is borne by "stabilizers" placed under them, such as cement or cinder blocks or screw jacks.[2] The owners all reside in their basic units, but only a few do so year-round. Most reside in them for two to seven months of the year.

---

[2] The weight of three units "is completely off the units' wheels," and they are completely supported by "stabilizers." One unit, however, has no stabilizers under the basic unit, but it is caulked to a 489 square-foot screen room and porch, which sits on footings.

¶ 5. Each lot also contains "one or more structures in addition to the basic unit." The "additional structures" include such things as decks attached to the basic units with lug nuts; screened rooms or porches on footings, attached to the basic units by caulking; and free standing sheds. All of the basic units are connected to utilities.

¶ 6. The Town assessed and taxed all of the owners' basic units and additional structures as improvements to real estate in 1995, 1996 and 1997. The owners paid the taxes and filed claims with the Town for the refund of "unlawful" taxes, which were disallowed. *See* WIS. STAT. § 74.35. This litigation followed, and the Town moved for summary judgment of dismissal. The trial court concluded that a mobile home on an owner's lot could not be taxed as real property unless "the majority of the weight of the mobile home is borne by some support other than its wheels." Nonetheless, because the court also concluded that none of the mobile homes were exempt from personal property taxes, it entered judgment dismissing the owners' claims. The owners appeal the judgment.

## ANALYSIS

■

¶ 7. We review an order for summary judgment de novo, applying the same standards as the trial court. *Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625 (1991). Summary judgment is proper when the pleadings, answers, admissions and affidavits show no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Maynard v. Port Publ'ns, Inc.*, 98 Wis. 2d 555, 558, 297 N.W.2d 500 (1980). The issues in this appeal largely present questions of statutory interpretation, which we

also decide de novo. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315 (Ct. App. 1997).

¶ 8. The owners' principal arguments focus on what they claim to be the trial court's unconstitutional "imposition" of a personal property tax on their mobile homes. They claim the trial court should have ended its decision with its conclusion that "off its wheels and . . . set upon some other support," under WIS. STAT. § 70.043(1), means that a mobile home that is connected to utilities and situated on its owner's land may only be taxed as an improvement to real property if "the majority of the weight of the mobile home is borne by some support other than its wheels." And, because the trial court also concluded that the record on summary judgment was insufficient to determine whether most of the representative mobile homes did or did not meet its 50% support test, the owners assert that the court should have denied the Town's motion and set the matter for trial. According to the owners, by going on to analyze whether the mobile homes would have been taxable by the Town as personal property, the trial court usurped the legislative function of taxation and violated the owners' constitutional rights to due process and equal protection of the laws.

¶ 9. The Town responds that the trial court was correct in dismissing the owners' claims, not only for the reason it did, but also because the Town properly assessed the mobile homes in question as improvements to real property under WIS. STAT. § 70.043(1).[3]

---

[3] The owners assert in their reply brief that we cannot entertain the Town's argument that the trial court incorrectly interpreted WIS. STAT. § 70.043(1) because the Town did not cross-appeal that portion of the court's decision. A respondent, however, may raise an issue without filing a cross-appeal when all that is sought is the raising of an error that, if corrected,

We first conclude that our de novo review of the appealed summary judgment must begin where the trial court's analysis did—with the question of whether the mobile homes in question were "set upon a foundation." If so, they were properly taxed as real property, and we conclude that this was the case for most of the mobile homes for which facts were presented on summary judgment. We further conclude that, the one "representative" mobile home which did not meet the statutory definition for an improvement to real property, was nonetheless not subject to an unlawful tax.

¶ 10. The owners concede that each of their mobile homes is situated on land owned by the mobile home owner, and that each is connected to utilities. Thus, there is no dispute that two of the three requirements under WIS. STAT. § 70.043 for taxing a mobile home as an improvement to real property are met. But, because wheels remain in place on the "basic units," the owners claim that the final requirement for real property taxation is not met—the units are not "off [their] wheels and . . . set upon some other support." *See* § 70.043(1). The Town, on the other hand, argues that because all but one of the representative mobile homes are "set upon some other support" in addition to their wheels, each is "off its wheels" and is thus "set upon a foundation" within the meaning of the statute.

¶ 11. We, like the trial court, conclude that WIS. STAT. § 70.043(1) is ambiguous because its meaning cannot readily be determined from its plain language. The statute's definition of "set upon a foundation," i.e.,

would sustain the judgment. *Auric v. Continental Cas. Co.*, 111 Wis. 2d 507, 516, 331 N.W.2d 325 (1983). In other words, a respondent is always free to argue that the trial court "was right, although for the wrong reason." *Id.* (citation omitted).

140

"off its wheels and . . . set upon some other support," is capable of being understood by reasonably well-informed persons in two or more different ways. *See State v. Setagord*, 211 Wis. 2d 397, 406 ¶ 12, 565 N.W.2d 506 (1997). This language could mean, as the owners maintain, that in order to be deemed an improvement to real property, a mobile home must have its wheels physically removed, or, at a minimum, that the entire weight of the mobile home must rest on something other than its wheels. Or, it could mean, as the Town argues, that a mobile home is "off its wheels and . . . set upon some other support" whenever any part of its weight is borne by other than its wheels. Finally, it could also mean, as the trial court concluded, that what is required is that a majority of the weight of the mobile home is borne by some support other than its wheels.

¶ 12. When the language of a statute is ambiguous, we are to turn to extrinsic aids such as the legislative history, scope, context and purpose of the statute to determine legislative intent. *Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25–26 ¶ 12, 559 N.W.2d 563 (1997) (citations omitted). The legislative history of the statute compels us to reject the trial court's "majority of the weight" test. WISCONSIN STAT. § 70.043 was enacted as part of 1983 Wis. Act 342, which originated with the Legislative Council Special Committee on Mobile Home Taxation and Zoning. In its report to the legislature, the Legislative Council noted that under then current law, a mobile home was subject to taxation as real property if the value of "additions, attachments, annexes, foundations and appurtenances" to the mobile home equaled or exceeded 50% of the assessable value of the mobile

home. Wisconsin Legislative Council Report No. 20 to the 1983 Legislature, at 3 (May 24, 1983) ("R.L. 83–20"). The report goes on to explain:

> The Committee received testimony that the "50%" test under current law has two major defects.
>
> First, it is difficult and time-consuming for assessors to determine the value of a foundation, additions and attachments to the mobile home as a percentage of the value of the mobile home itself. Second, the 50%-of-value test is not an accurate indicator of whether a given mobile home has taken on the character of a real estate improvement and, therefore, should be subject to property taxation as is conventional housing.

*Id.* The present three-pronged test (connected to utilities, "set upon a foundation," on land owned by the mobile home owner) was thus recommended both because it was deemed to be "a better indicator . . . of when a given mobile home has taken on the character of real property" and because a "more easily-administered standard is necessary." *See id.* at 4, and "Property Taxation of Mobile Homes in Wisconsin," Legislative Council Staff Brief 82–10, at 15 (July 1, 1982).

¶ 13. A test which requires an assessor to determine how much of the weight of a mobile home is supported by its wheels, and how much is supported by other supports on which it partially rests, could hardly be said to be more easily administered than the "50%-of-value" test it replaced. If the former test was deemed "difficult and time-consuming," it is hard to see how a "primary support" or "50%-of-weight" test would not be more so. Moreover, it is not even clear how an assessor would make the determination, resulting, as the Town argues, in a large measure of speculation or arbitrariness. The history of the current statutory language

makes clear that the legislature intended to simplify and streamline the personal-versus-real property determination, a goal that would be thwarted if we were to adopt the trial court's interpretation.

¶ 14. By the same token, we reject an interpretation that would require the entire weight of a mobile home be supported by other than its wheels before it may be deemed an improvement to real estate. This would be contrary to the legislative purpose in enacting a real property/personal property distinction in the taxation of mobile homes:

> The primary rationale under the property tax system for distinguishing between real and personal property is that personal property is more mobile than real property. It is easier to enforce and collect property taxes which are levied upon real property than taxes which are levied upon personal property. Therefore, assessment procedures, payment due dates and the remedies which are available to collect property taxes differ according to whether the property is classified as real property or as personal property.

R.L. 83–20, at 3–4.[4] To conclude that a mobile home may not be taxed as realty until its last ounce of weight has been removed from its wheels would thwart the legislature's goal of treating mobile homes which have "taken on the character of a real estate improvement" the same as "conventional housing" for property taxation purposes. *See id.* at 3. To argue that mobile homes such as most of those described in this record, which not only rest upon blocks or jacks, but also have exten-

---

[4] For example, real estate taxes are generally payable in two installments and become a lien on the real estate if not paid. Personal property taxes are due in a lump sum and are the personal obligation of the property owner.

sive additions and attachments on stationary footings, remain "mobile" in character because the owners have chosen to leave wheels under them, defies the purpose of the legislative distinction and, as the Town argues, provides opportunities for manipulation of the property taxation system.

¶ 15. Having rejected two possible alternatives as unreasonable and contrary to legislative intent, it remains for us to consider whether interpreting WIS. STAT. § 70.043(1) to require a mobile home to be taxed as an improvement to real estate whenever any part of its weight is "off its wheels and . . . set upon some other support" is reasonable and consistent with the legislature's intent and purpose. We conclude that it is. First, we note that being "set upon a foundation" is only one of three requirements for subjecting the mobile home to taxation as real property. A mobile home on a rented lot in a mobile home park or campground is excluded, no matter how much or how little it rests on something other than its wheels. By the same token, a mobile home that is temporarily parked on its owner's land is excluded because it would be unlikely to be "connected to utilities" if it were truly in a storage or transient status. And, even if a mobile home is on the owner's land and connected to utilities for temporary use, an owner may preserve a unit's mobile character by simply leaving it on its wheels and no other supports. Once the owner takes steps beyond the connection to utilities to further reduce the home's mobility, e.g., by resting it in whole or in part on blocks or other "stabilizers," it is hard to see why the home should not then be treated, for tax purposes, the same as "conventional housing," as the legislature intended.[5]

---

[5] *See* R.L. 83–20, at 4 ("The Committee believed that, under these circumstances [connection to utilities, set upon a founda-

¶ 16. We thus conclude that when a mobile home, situated on land owned by its owner, is connected to utilities and is not completely supported by its wheels, but also rests in part on some "other" means of support, it is "off its wheels" and "set upon some other support," and is therefore "set upon a foundation" within the meaning of WIS. STAT. § 70.043(1). We find this interpretation to be consistent with the legislature's intent and purpose, as evidenced by the history of the statute, and it provides a reasonable and workable standard for assessors and taxpayers alike.

¶ 17. Most of the "representative" mobile homes described in the record were thus properly assessed by the Town as improvements to real property because they rest, in whole or in part, on supports other than their wheels. We next consider the application of the statute to the one mobile home described in the record as having no support for the basic unit other than its wheels, but which was attached by caulking to a substantial screen room and porch, which sits on footings. The Town argues that this mobile home should also be deemed an improvement to real property because the structures attached to the basic unit "are not supported by wheels at all" and thus the "home is not 'mobile' in any sense of the word." The Town's position is essentially that, because the statutory definition of a mobile home "includes any additions, attachments, annexes, foundations and appurtenances," WIS. STAT. § 66.058(1)(d), if any of these auxiliary items are present and not on wheels, the mobile home must be

___

tion, on land owned by the mobile home owner] the mobile home is sufficiently permanent that it should be taxed as is conventional housing.").

145

deemed an improvement to real property under WIS. STAT. § 70.043(1). We disagree.

■

¶ 18. We acknowledge that WIS. STAT. § 70.043 refers to WIS. STAT. § 66.058(1)(d) for a definition of "mobile home." However, when defining what it means for a mobile home to be "set upon a foundation," § 70.043(1) requires the mobile home to be "off *its* wheels" (emphasis added). It makes no sense to talk about an attached deck or porch being "off its wheels." The plain implication of this language is that the legislature was referring to the "basic unit," which is the only structure that would once have been on wheels. And, although we agree with the Town that a mobile home that is still "on its wheels" but is attached in some way to another, more permanent structure, may be every bit as immobile as one that is "off its wheels," attachment to other structures is *not* the test the legislature has specified in § 70.043 for making the real-versus-personal property distinction.

¶ 19. What remains, then, is for us to consider whether the owner of this last-described mobile home has established that he or she was subjected to an "unlawful tax." WISCONSIN STAT. § 74.35(2) permits "[a] person aggrieved by the levy and collection of an unlawful tax assessed against his or her property" to "file a claim to recover the unlawful tax against the taxation district which collected the tax," which is the cause of action the owners have alleged. An "unlawful tax" is a "general property tax with respect to which one or more errors specified in s. 74.33(1)(a) to (f) were made." Section 74.35(1). The specified errors are:

> (a) A clerical error has been made in the description of the property or in the computation of the tax.

(b) The assessment included real property improvements which did not exist on the date under s. 70.10 for making the assessment.

(c) The property is exempt by law from taxation, except as provided under sub. (2).

(d) The property is not located in the taxation district for which the tax roll was prepared.

(e) A double assessment has been made.

(f) An arithmetic, transpositional or similar error has occurred.

WIS. STAT. § 74.33(1).

¶ 20. The owners alleged in their complaint that the property taxes levied against their mobile homes were unlawful "as provided in WISCONSIN STATUTE § 74.33(1)(a), (b) and (c)." If the Town committed an error in levying and collecting property taxes on a mobile home that rests wholly on its wheels, however, the error was that it intentionally, but erroneously, classified the mobile home as an improvement to real property, rather than as personal property. We fail to see, therefore, how the error could be construed as "clerical" under § 74.33(1)(a). Neither do we believe the alleged error may be characterized as the inclusion of a real property improvement that "did not exist" on the assessment date under (1)(b). The owners do not claim that their mobile homes did not exist on the assessment date, but that they do not constitute "improvements to real property," but were instead personal property under WIS. STAT. § 70.043(2) and exempt from taxation under WIS. STAT. § 70.111(19)(b).

¶ 21. Thus, if any mobile homes were unlawfully taxed, as alleged by the owners, it could only be because they were "exempt by law from taxation" under WIS. STAT. § 74.33(1)(c). To be exempt from taxation, a mobile home, "as defined in s. 66.058," must be

147

"no larger than 400 square feet and . . . used primarily as temporary living quarters for recreational, camping, travel or seasonal purposes." WIS. STAT. § 70.111 (19)(b). And, as we have noted, the definition of "mobile home" in WIS. STAT. § 66.058(1)(d) specifically includes within it "any additions, attachments, annexes, foundations and appurtenances" associated with the mobile home. Dictionary definitions for these terms include the following:[6]

> Addition—"[a] structure that is attached to or connected with another building that predates the structure"; "a wing, room, etc., added to a building."
> Attachment—"something . . . that is affixed or connected to something else"; "something attached [joined; connected; bound]."
> Annex—"[s]omething that is attached, such as . . . an addition to a building"; "a subsidiary building or an addition to a building."
> · Appurtenance—"[s]omething that belongs or is attached to something else"; "something subordinate to another, more important thing; adjunct; accessory."

¶ 22. It seems clear from the foregoing that any rooms, porches, decks and the like, that are attached in any way to the "basic unit" are included within the definition of a mobile home. Thus, the area of any attached structures must be counted when determining the square footage of a "mobile home." The Town, however, would have us go a step further to hold that the floor area of any freestanding structures situated on the same lot as a mobile home must also be included when determining whether a mobile home is exempt

---

[6] The first definition for each term is from BLACK'S LAW DICTIONARY (7th ed. 1999); the second is from THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2nd ed. 1987).

from taxation under WIS. STAT. § 70.111(19)(b). For support, it points to the fact that some of the terms employed in the statutory definition of a mobile home are broad enough to include unattached as well as attached structures (e.g., annexes, appurtenances). The Town also claims that the Wisconsin Department of Revenue (DOR) Assessor's Manual supports this view.

¶ 23. We reject the Town's proffered interpretation that would place freestanding sheds, barns and garages within the statutory definition of a "mobile home." Although some of the terms in the statutory definition of a mobile home might, standing alone, be capable of supporting such an interpretation, taken together, we believe the statutory language plainly envisions only structures that are attached or affixed to the "basic unit." Moreover, although we agree with the Town that the DOR's assessment manual may be relied upon as an authoritative aid in interpreting Wisconsin's property taxation statutes,[7] we do not read the manual as advising assessors to include the area of freestanding structures when determining whether a mobile home qualifies for exempt status under WIS. STAT. § 70.111(19)(b). The Town asserts that the manual "instructs assessors to count all structures on a lot in determining the square footage of mobile homes." However, such an instruction is not to be found in the sections of the manual the Town cites.

¶ 24. Rather, the manual recites that WIS. STAT. § 66.058(1)(d) includes within the definition of a mobile home "any additions, attachments, annexes, foundations and appurtenances," and advises that "*these items* must be included in calculation of the square

---

[7] *See, e.g., TDS Realestate Inv. Corp. v. City of Madison*, 151 Wis. 2d 530, 540–41, 445 N.W.2d 53 (Ct. App. 1989).

footage." Assessor's Manual at 15–22 (emphasis added). The manual thus merely quotes the statutory terms but does not endorse the Town's broad interpretation of them. To the contrary, the very next sentence in the manual undermines the Town's assertion that the manual supports its interpretation: "A unit *and attachments* greater than 400 square feet .is not" an exempted mobile home.[8] (Emphasis added.)

¶ 25. Applying the foregoing to the one representative mobile home that is supported entirely by its wheels, we conclude that the mobile home was not exempt under WIS. STAT. § 70.111(19)(b). The parties stipulated that this mobile home consisted of a basic unit comprising 396 square feet, together with a screen room/porch "which is caulked to the basic unit" and encompasses an additional 489 square feet, rendering

---

[8] Further indication that the Department of Revenue does not view freestanding structures as properly includible when ascertaining the taxable status of a mobile home under WIS. STAT. § 70.111(19)(b) is found in the following excerpt from a DOR publication entitled "A Property Tax Guide for Mobile Home Owners":

> **How should an assessor measure my mobile home to determine if it qualifies for exemption?**
>
> The assessor should calculate the gross square footage rounded to the nearest square foot using the outside length and width of the mobile home. The assessor should also include the area of any additions and attachments to the mobile home. Only clearly attached additions and attachments to the recreational mobile home are included in the calculation of gross square footage. Examples of additions and attachments would include attached decks, screen porches, and pop-out rooms. Assessors should not include free standing structures in the mobile home area calculation. Assessors should assess garages, sheds, and other free standing structures as real estate if the mobile home owners own the land or as personal property if they do not own the land.

the countable area well in excess of 400 square feet. Since this mobile home was not exempt from personal property taxation, we, like the trial court, conclude that the tax levied and collected by the Town was not an "unlawful tax" under WIS. STAT. §§ 74.33(1) and 74.35.

¶ 26. The owners do not dispute that, whether taxed as realty or personally, the valuation of a mobile home would be the same, and hence, so would the tax levied upon it. *See State ex rel. Keane v. Board of Review*, 99 Wis. 2d 584, 588, 299 N.W.2d 638 (Ct. App. 1980) ("For valuation purposes, it makes no difference whether [property is termed] real or personal property . . . . Valuation of both real and personal property for property tax purposes is based upon fair market value." (citations omitted)); *see also* WIS. CONST. art. VIII, § 1 ("The rule of taxation shall be uniform. . . ."). The owners claim, however, that by refusing to permit them to recover property taxes levied on mobile homes that were incorrectly assessed as real property instead of as personal property, the trial court, and now this court, violate their right to due process, usurp a legislative function, and deny them equal protection of the laws. We disagree.

¶ 27. The owners claim that since the Town notified them only of a levy against their mobile homes as real property, any owners whose homes were in fact personal property and tax exempt, were denied proper notice and the opportunity to be heard. But the record shows just the contrary. The claim that some of the mobile homes should be ruled tax exempt under WIS. STAT. § 70.111(19)(b) has been heard, both here and in the trial court. Our conclusion, and that of the trial court, that the tax on any mobile home that was

improperly classified as realty is not "unlawful" unless its owner can establish that it was "exempt by law from taxation," also does not constitute the judicial levying of a tax. We and the trial court are merely performing a proper judicial function—the determination of whether an "unlawful tax" has been levied by the Town.

¶ 28. The owners' claimed violation of equal protection is that "the court's ruling effectively deprives [them] of an accurate property classification," and it "subjects [them] to potentially incorrect property classifications with very real consequences." But, except for some differences in the timing and methods of collection of personal property taxes, as opposed to real property taxes, the owners point to no harm that has befallen any of them, with the possible exception that some "non-representative" owners may be able to establish both that their homes should have been classified as personal property, and that they meet the requirements under WIS. STAT. § 70.111(19)(b) for exemption. As to the twenty representative owners, and any of the non-representative owners who cannot make these showings, there is no claim that more tax was paid on non-exempt mobile homes because they were deemed real property than if the Town had assessed them as personal property.[9]

¶ 29. We thus reject the owners' constitutional claims.[10] They make some policy arguments as well,

[9] The Town points out that only "unlawful" taxes that are found to be "excessive" may be recovered. WIS. STAT. § 74.39 ("If . . . the court determines that the amount of taxes paid by the plaintiff is not excessive, judgment shall be entered for the defendant.").

[10] The owners also rely on *Marina Fontana v. Village of Fontana-on-Geneva Lake*, 111 Wis. 2d 215, 330 N.W.2d 211

however. The owners claim that because the majority of them make their permanent homes outside the Town, and use their mobile homes on a seasonal basis only, they "do not impose the burdens on schools and municipal services that permanent residents do." The implication is that, as seasonal residents, the owners should not be required to pay property taxes to the Town. But, the treatment of these owners is no different than that accorded the owners of vacation homes, cabins and cottages in Wisconsin, who could make a similar argument.

¶ 30. The owners also point to the importance of the "recreation and tourism industries" to our state, and assert that "the legislature has chosen a specific

---

(1983) for the proposition that a taxing body may not offset the underpayment of tax on one piece of property against taxes overpaid on another, which they claim is the result of our and the trial court's rulings. The holding in *Fontana* is of no assistance to the owners, however. There, the village attempted to avoid a recovery by a taxpayer of illegal property taxes levied on the taxpayer's real estate by claiming that it had underpaid taxes legitimately due on certain personal property located on the same premises. The supreme court interpreted similarly worded predecessors to the statutes before us now and concluded that such an offset was improper. Here, however, the dispute is over only one object of taxation—the owners' mobile homes. The holding in *Fontana* does not preclude the Town from arguing in defense of the taxes it levied on the mobile homes that they would have been subject to an equal amount of tax if the mobile homes had been classified as personal rather than real property. *See id.* at 223–24; *see also Fifield v. Marinette County*, 62 Wis. 532, 541, 22 N.W. 705 (1885) (A taxpayer who challenges a tax as unlawful must allege an equitable offer to pay taxes justly chargeable "to the property . . . on account of which he seeks relief.").

classification and exemption scheme for recreational mobile home users." We agree, and our holding today interprets and applies the legislature's intended classification and exemption scheme—it does not eliminate it. If an owner wishes to avoid having his or her "recreational mobile home" taxed as an improvement to real estate, he or she may simply elect to locate it in a campground instead of on owned land, or not connect it to utilities, or leave it wholly supported by its wheels. And, to preserve eligibility for exemption from personal property taxes, the owner need only ensure that it is not attached to any structures whose area would cause the mobile home to exceed the statutory size limitation of 400 square feet. By doing so, the owner would thus preserve the mobility and smallness of his or her mobile home, and the consequent exemption from property taxes which the legislature intended when it created a tax exemption for "recreational mobile homes."

■■■

¶ 31. Finally, we must address the disposition of the claims of the hundred or more "non-representative" owners. The Town argues that under the parties' stipulation, the non-representative owners were given the opportunity after the trial court's initial decision to come forward and argue their entitlement to exemption from property taxes for their mobile homes, but none did so. This may be so, but we have modified the conclusions reached by the trial court regarding what must be shown to qualify a mobile home as exempt from personal property taxation. In particular, the trial court apparently adopted the Town's view that the floor area of freestanding structures on the owners' lots must be counted against the 400 square-foot limitation under WIS. STAT. § 70.111(19)(b), an interpretation

which we have rejected. On remand, therefore, any "non-representative" owner shall be given the opportunity to establish facts qualifying his or her mobile home for assessment as personal property under WIS. STAT. § 70.043(2), and for the exemption under § 70.111(19)(b), as we have interpreted these provisions.

## CONCLUSION

¶ 32. For the reasons discussed above, we reverse the appealed judgment in part, and we remand for further proceedings consistent with this opinion with respect to the "non-representative" owners. To recap, the mobile homes of all owners whose "basic units" are not supported entirely by their wheels were properly taxed by the Town as improvements to real estate. If the owner of any "non-representative" mobile home can establish on remand both that (1) his or her basic unit rests wholly on its wheels, thus qualifying it as personal property for purposes of taxation; and (2) the total area of the basic unit, together with that of any structures attached to it in any way, does not exceed 400 square feet (and that it is used "primarily as temporary living quarters for recreational, camping, travel or seasonal purposes," *see* WIS. STAT. § 70.111(19)(b)); the mobile home is exempt from tax and the Town levied and collected an unlawful tax from that owner.[11]

¶ 33. We affirm the appealed judgment insofar as it dismisses the claims of the "representative" own-

---

[11] The owner is, of course, still liable for real estate taxes properly levied on the lot and all freestanding structures which may be situated on it, but a refund is due for the taxes levied on the exempt mobile home itself, including its attached structures.

ers, as well as the claims of those "non-representative" owners who cannot make the showings described in the preceding paragraph. Neither party shall be entitled to costs in this appeal. *See* WIS. STAT. § 809.25(1)(a)5.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

¶ 34. DYKMAN, P.J. (*dissenting*). In a nutshell, the majority has concluded that it does not like giving the legislative exemption for certain mobile homes to everybody who qualifies, and therefore gives it to nobody. While I agree in principle that exemptions from taxation should be limited because they narrow the tax base, I cannot join the majority opinion because I conclude that its opinion is a legislative rather than a judicial act. I will explain this conclusion.

¶ 35. In its budget bill for 1984, the legislature defined a "mobile home" for property tax purposes. *See* 1983 Wis. Act 342. Because Wisconsin distinguishes between real estate and personal property in some tax contexts, the new definition explained when a mobile home was personal property and when it was real estate. Wisconsin levies taxes on most real estate and on some personal property. Mobile homes have some characteristics of each. In many contexts, the difference is not relevant, but because the legislature has exempted from taxation some mobile homes that are personal property, the distinction is often important. WISCONSIN STAT. § 70.043 (1997–98)[1] defines when a mobile home is personal property and when it is real estate:

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

(1) A mobile home, as defined in s. 66.058(1)(d), is an improvement to real property if it is connected to utilities and is set upon a foundation upon land which is owned by the mobile home owner. In this section, a mobile home is "set upon a foundation" if it is off its wheels and is set upon some other support.

(2) A mobile home, as defined in s. 66.058(1)(d), is personal property if the land upon which it is located is not owned by the mobile home owner or if the mobile home is not set upon a foundation or connected to utilities.

¶ 36. In 1991, the legislature decided to exempt small qualifying mobile homes from personal property taxation. *See* 1991 Wis. Act 269, § 490m. But the exemption is not available if the mobile home is realty. The exemption statute, WIS. STAT. § 70.111(19)(b), exempts: "Mobile homes, as defined in s. 66.058, that are no larger than 400 square feet and that are used primarily as temporary living quarters for recreational, camping, travel or seasonal purposes."

¶ 37. When it enacted WIS. STAT. § 70.111(19)(b), the legislature was aware of WIS. STAT. § 70.043(1) and of WIS. STAT. § 348.10(5)(c), which requires that a mobile home must have at least thirty-five pounds of tongue weight.[2] Both statutes were in existence when the legislature enacted the present version of

---

[2] WISCONSIN STAT. § 348.10(5)(c) provides:

(5) The load imposed upon trailers or semitrailers shall be distributed in a manner that will prevent side sway under all conditions of operation:

. . . .

(c) The load carried by any trailer, semitrailer or mobile home shall be so positioned that a weight of not less than 35 pounds is imposed at the center of the point of attachment to the towing vehicle when parked on a level surface.

§ 70.111(19)(b). Thus, the legislature knew that a mobile home could not legally have all of its weight rest on its wheels. Moreover, an exempt mobile home which carried all of its weight on its wheels would be ridiculous—it would behave like a forty-foot-long teeter-totter. The majority's rationalization that "an owner may preserve a unit's mobile character by simply leaving it on its wheels and no other supports" may be true, but an owner who does so is in for hair-raising experiences when getting up in the night to visit the bathroom. I find it doubtful that the legislature intended this.

¶ 38. What the majority has concluded is that no mobile home located on its owner's real estate can be exempted from taxation unless the owner disconnects the mobile home from its utilities. The majority reaches this conclusion because it requires one hundred percent of the mobile home's weight to be carried on its wheels before the exemption applies. But no such mobile home exists. Under WIS. STAT. § 348.10(5)(c), all mobile homes must have at least thirty-five pounds of their weight rest on something other than their wheels, and it is that thirty-five pounds that the majority uses to disqualify all 400-square-foot or less, landowner-occupied, utility-connected mobile homes from personal property tax-exempt status.

¶ 39. The legislature must have intended to exempt some mobile homes from personal property taxes when it enacted WIS. STAT. § 70.111(19)(b). The legislature was aware of WIS. STAT. § 70.043(1) and the significance of the distinction between mobile homes that are personal property and mobile homes that are real estate. Had the legislature wanted to tax small utility-connected mobile homes located on their owners' real estate, it could easily have done so in

§ 70.111(19). But it did not. The only rational explanation of the exemption is that it applies to all small qualifying mobile homes located on their owners' real estate.

¶ 40. There is nothing in WIS. STAT. § 70.111(19)(b) suggesting an exemption carefully crafted so as to apply to no one who owned the property upon which his or her utility-connected mobile home would be placed. That concept just cannot be gleaned from the words of § 70.111(19)(b). On its face, § 70.111(19)(b) applies to mobile homes placed upon their owners' real estate. It defies common sense to conclude that the legislature had a secret wish to deny exemption to all mobile homes if they were connected to utilities and located on their owners' land. But that is what the majority opinion accomplishes.

¶ 41. The legislature is also presumed to use words of the English language in their normal and ordinary sense. *See* WIS. STAT. § 990.01(1); *State v. Ehlenfeldt*, 94 Wis. 2d 347, 356, 288 N.W.2d 786 (1980). "Off its wheels" is not a difficult or ambiguous concept. Anyone who has changed a car tire or watched a tire being changed is fully aware of the significance between the tire touching or not touching the ground. If the tire remains touching the ground, it cannot be changed. If there is a space between the tire and the ground, the vehicle is off that wheel. If all four tires do not touch the ground, the vehicle is off its wheels. If they touch, it is on its wheels. To interpret the phrase "off its wheels" as the majority has done to mean "on its wheels" just does not make sense. Under this definition, every mobile home or trailer traveling on our highways is doing so "off its wheels."

¶ 42. "Off its wheels" is a concept easily determined by assessors. All they have to do is bend down

and look. If there is space between a mobile home's tires and the ground, it is "off its wheels." If there is not, then it is not "off its wheels." Interpreting the statute as written will cause no hardship for assessors.

¶ 43. The majority explains its decision by noting:

> To argue that mobile homes such as most of those described in this record, which not only rest upon blocks or jacks, but also have extensive additions and attachments on stationary footings, remain "mobile" in character because the owners have chosen to leave wheels under them, defies the purpose of the legislative distinction and, as the Town argues, provides opportunities for manipulation of the property taxation system.

¶ 44. I agree that exemptions from taxation can alter people's behavior; that is true of all exemptions. People who want an exemption will tailor their actions to fit the exemption. Many people seek tax advice on how to take advantage of the income tax code's provisions. This is not illegal, immoral, or unethical. The majority views a qualifying mobile home as a "manipulation of the property taxation system." That it may be, but the legislature has made the policy decision that the mobile homes which distress the majority are still mobile homes, and still exempt from personal property taxation. WISCONSIN STAT. § 66.058(1)(d) describes a mobile home as the vehicle itself "and includes any additions, attachments, annexes, foundations and appurtenances." I see no reason for a court to adopt a rationalization that tax exemptions are not available to those who actively seek them, because that constitutes "manipulation."

¶ 45. I would read the words of the statutes involved for what they say. Their language is neither complicated nor technical. If that language results in an exemption from taxation, so be it. If the legislature feels that a different policy regarding small mobile home taxation is appropriate, it can easily adopt that new policy. I probably agree with the majority's view that an exemption for small, landowner-occupied, utility-connected mobile homes is inappropriate public policy. But I am unwilling to judicially repeal the statute granting the exemption, even in part. Therefore, I respectfully dissent.